The **STATE OF NEW YORK**,
Plaintiff-Appellee,
Cross-Appellant,

v.

**SHORE REALTY CORP.** and Donald LeoGrande, Defendants-Appellants, Cross-Appellees.

Nos. 1234, 1333, Dockets 85–7241, 85–7332.

United States Court of Appeals, Second Circuit.

Argued April 18, 1985.
Decided May 7, 1985.

David H. Peirez, Garden City, N.Y. (Prof. William R. Ginsberg, Thomas P. Schulz, Reisman, Peirez & Reisman, Garden City, N.Y., on brief), for defendants-appellants, cross-appellees.

Gordon J. Johnson, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., James A. Sevinsky, Stuart Miller, Nancy Stearns, Asst. Attys. Gen., New York City, on brief), for plaintiff-appellee, cross-appellant.

Before MESKILL, NEWMAN and PIERCE, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

Shore Realty Corporation and its controlling officer, Donald LeoGrande, appeal from an order of the District Court for the Eastern District of New York (Henry Bramwell, Judge), entered March 26, 1985, holding them in civil contempt for failure to obey three orders previously entered in the course of litigation brought by the State of New York to require Shore and LeoGrande to remove hazardous chemicals from Shore's waterfront property in Glenwood Landing, New York. Judge Bramwell imposed a coercive fine of $1,000 per day until compliance with his orders. For reasons that follow, we affirm the adjudication of contempt, modify the amount and timing of the coercive fine, and remand for further proceedings.

The three orders were entered in litigation brought by the State of New York in February 1984 under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601–9657 (1982) ("CERCLA") and New York public nuisance law. On June 15, 1984, the parties stipulated to entry of an order ("the June order") requiring the defendants to remove approximately 410 drums of hazardous chemicals stored on the property. On October 30, 1984, the District Court, having granted the State's motion for partial summary judgment, entered an order of permanent injunction ("the October order") requiring the defendants to remove all of the approximately 700,000 gallons of hazardous chemicals, most of which are contained in five large tanks located on the property. Defendants appealed the October order to this Court

and promptly sought a stay pending appeal. On January 18, 1985, the District Court entered an order ("the January order" or "the discovery order") requiring the defendants to answer interrogatories and produce documents concerning their financial condition.

While the appeal and the stay motion were pending, the State initiated proceedings to hold Shore and LeoGrande in civil contempt for failure to comply with the June, October, and January orders. In an order filed March 26, 1985, after an evidentiary hearing, the District Court found both appellants in civil contempt for failure to comply with all three orders. As a coercive sanction, Judge Bramwell imposed a $1,000 per day fine effective from March 21, 1985, the date the contempt adjudication was made and placed on the record in open court, until appellants (1) execute a contract with a qualified hazardous waste remover for the removal and final disposition of the 700,000 gallons of chemical waste on the property, (2) commence actual physical removal of such waste, and (3) comply with the discovery order. The fine was directed to be paid to the United States Treasury instead of the New York Hazardous Waste Remedial Fund, as the State had requested.

The defendants promptly appealed the contempt order and sought a stay. The State cross-appealed that portion of the contempt order directing payment of the daily fine to the United States Treasury. On April 3, 1985, this Court entered an order with respect to both the initial motion to stay the District Court's October order (the motion had been held in abeyance) and the subsequent motion to stay the contempt order. Our April 3 ruling provided that the contempt order and the daily fine would be stayed upon the posting of a $150,000 supersedeas bond conditioned upon (1) compliance by April 15, 1985, with both the June order for removal of the 410 drums and the discovery order, and (2) compliance by May 3, 1985, with that part of the March 26, 1985, contempt order requiring both execution of a contract for removal of the 700,000 gallons and commencement of actual removal. As we construe the April 3 ruling, it also contemplated a stay of the District Court's October ruling on the same conditions on which the contempt order was to be stayed. We expedited the appeal from the contempt order. Since the appellants did not post the required supersedeas bond, the stay authorized by our April 3 ruling never became effective and consequently the October order, the contempt order, and the daily fine have remained in full force.

On April 4, 1985, one day after our ruling on the stay application, we affirmed the District Court's grant of partial summary judgment and the October order requiring the defendants to remove the 700,000 gallons of hazardous chemicals. *New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985). Before us now are the expedited appeal and cross-appeal from the contempt order.

### Discussion

Initially, the State contends that the contempt order is not appealable at this point since the underlying action has not been concluded by a final judgment. *See Martin-Trigona v. Shiff*, 702 F.2d 380, 387 (2d Cir.1983). However, the June order requiring removal of the 410 drums and the October order requiring removal of the 700,000 gallons are permanent injunctions. As to such orders, a contempt adjudication is a post-judgment proceeding from which an appeal may be taken, even if some aspects of the underlying litigation, such as damages, remain to be determined. *See New York Telephone Co. v. Communications Workers of America*, 445 F.2d 39, 44–46 (2d Cir.1971); *see also Emery Air Freight Corp. v. Local Union 295*, 449 F.2d 586 (2d Cir.1971), *cert. denied*, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). The contempt adjudication for violation of the discovery order is sufficiently related to the merits of the adjudication for violation of the June and October orders to warrant the exercise of pendent appellate jurisdiction, even if the discovery contempt might not be appealable independent of the

other adjudications, *see International Business Machines Corp. v. United States,* 493 F.2d 112, 114–15 (2d Cir.1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974).

The defendants challenge the merits of the contempt adjudication with respect to violation of the June and October orders on the ground that circumstances that became known after the issuance of the contempt order have increased the costs of compliance beyond their financial capacity. They rely on the principle that a person may not be held in civil contempt and subjected to coercive sanctions if he is unable to comply with the court's order. *Maggio v. Zeitz,* 333 U.S. 56, 76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948); *In re Sobol,* 242 F. 487, 489 (2d Cir.1917). They further contend that a contemnor may assert on appeal circumstances occurring since the contempt adjudication that render compliance impossible. *See Shillitani v. United States,* 384 U.S. 364, 371–72, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966).

The factual predicate for this contention is the discovery of larger quantities of PCB's (polychlorinated biphenyls) than originally estimated in some of the 700,000 gallons of waste chemicals required to be removed. The defendants contend that the higher levels of PCB's, which make removal and ultimate disposition of the chemical wastes more expensive, have increased the cost of compliance from an original estimate of between $1 million and $1.3 million to a current estimate of approximately $2.25 million. The per gallon cost of removing the contents of one tank, originally estimated at 26¢ to 30¢ is now alleged to be $3 to $5. Furthermore, the defendants contend that, even though LeoGrande had previously acknowledged that his financial resources were sufficient to meet an obligation costing $1.3 million, he cannot now pay the currently estimated cost of compliance, nor even the originally estimated cost of compliance, nor even the originally estimated cost. He contends that the credit formerly available to him has been drastically curtailed as a result of this Court's affirmance of the October order, with its consequent imposition upon him of extensive personal liability. Apparently the contention is that he could raise funds, at least to a considerable extent, until a court ruled that he was required to do so. We acknowledge that the irony of that contention does not necessarily undermine its validity. The corporate defendant is alleged to have no assets other than the property on which the chemicals are located. The defendants contended at argument that they had already spent $400,000 for monitoring and removal.

Unlike *Shillitani,* where impossibility of compliance arose from the expiration of the term of the grand jury before which the contemnor had been ordered to testify, the claim of impossibility in this case cannot be determined on appeal from undisputed facts. On the contrary, the critical facts concerning both the costs of compliance and defendants' financial ability to meet these costs are matters of serious dispute. The State contends that the increased levels of PCB's are concentrated in an oily layer of liquid floating at the top of the fluids in one of the five tanks. The State has presented an expert's affidavit contending that removal of this oily layer will increase the original cost slightly but not nearly to the extent claimed by the defendants. The defendants' financial resources are also in dispute. We were advised at oral argument that compliance with the January discovery order has now been made, but the response has been submitted to the State under a protective order and is not part of the record on this appeal. Under these circumstances, it is obvious that determination of whether and to what extent the defendants are financially able to remove the 700,000 gallons of chemical waste must be made in the District Court after careful examination of the relevant facts.

■ The impossibility defense is aimed primarily at the adjudication of contempt for violation of the October order requiring removal of the 700,000 gallons. As to the June order requiring removal of the 410

drums, we were informed at oral argument that 255 have been removed and that within two days of the argument a contract was to be signed for removal of the remaining 155 drums. The defendants claimed that compliance with the June order was halted after discovery of PCB's in the drums. However, the readiness to sign a contract for removal of the remaining 155 drums precludes any serious claim that the defendants are unable to comply fully with the June order.

The defendants also challenge the contempt adjudication for failure promptly to comply with the January order for discovery. As indicated above, a response to the discovery requests has been furnished to the State while this appeal was pending, although the adequacy of that response has not been conceded by the State. Even if the response is adequate, the defendants' challenge is not moot since to some extent the daily coercive fine has been imposed for the period of non-compliance with the January order.

On the merits, the defendants contend that the District Court lacked power to issue discovery orders in aid of the October injunction ruling. They contend that, to the extent that the District Court relied on Rule 69 of the Federal Rules of Civil Procedure, it erred because this provision permits supplemental proceedings only in aid of execution upon a money judgment. *See NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 615 (9th Cir.1973); *Gross v. JFD Manufacturing Co.*, 31 F.R.D. 256 (E.D.N.Y.1962). We need not determine whether Rule 69 is applicable. The District Court had ample authority to issue all orders necessary for the enforcement of its October order. 28 U.S.C. § 1651. Discovery may occur in connection with a pending contempt proceeding, *NLRB v. Schill Steel Products, Inc.*, 408 F.2d 803, 806 (5th Cir.1969); *Bethlehem Shipbuilding Corp. v. NLRB*, 120 F.2d 126, 127 (1st Cir.1941), and we see no reason why a court must await the formal initiation of contempt proceedings to order discovery concerning a party's ability to

comply with orders issued but not carried out, at least when ability has been put in issue. At an earlier stage of the litigation the defendants contended that imposition of personal liability upon LeoGrande for CERCLA and state public nuisance damages would be "ruinous." The authority to issue the discovery order and to enforce compliance with it was not vitiated by LeoGrande's testimony at the contempt hearing that he was able to provide resources to pay removal costs then estimated to be approximately $1 million.

Since the June, October, and January orders were all properly entered and since there was no justification for the defendants' non-compliance demonstrated prior to the District Court's March 21, 1985, adjudication of civil contempt, that adjudication was entirely proper and is affirmed. Imposition of the coercive fine, however, is more problematical. To the extent that the fine was imposed to coerce compliance with the June and January orders, it too, was proper, because no adequate justification has been shown that would excuse prompt compliance with those orders. However, to the extent that the fine was imposed to coerce compliance with the October order its appropriateness cannot finally be determined on this record. We do not know whether the defendants at any time after issuance of the October order were financially able to pay the actual cost of compliance. Moreover, our April 3, 1985, ruling on the request for a stay of the contempt sanctions recognized that a 30-day period would be appropriate from the date of that ruling to afford the defendants an opportunity to enter into an appropriate contract for removal of the 700,000 gallons. Though the stay never became effective because the defendants did not post a supersedeas bond, the order authorizing a stay nevertheless is pertinent for its recognition that the October order is not the sort of injunction that can be complied with immediately. Moreover, though this Court has never stayed the October order, its action in holding in abeyance the motion to stay that order created some uncertain-

ties as to the timing of defendants' compliance obligations, even though the obligation to comply remained in force.

Under all the circumstances, we deem it appropriate to modify the $1,000 per day contempt sanction to some extent. We will consider $100 per day appropriate as a coercive sanction to achieve compliance with the January order and uphold the running of a fine at that rate from March 21, 1985, when the contempt adjudication was made, until the date when the defendants submitted their response to the State. We will consider $300 per day appropriate as a coercive sanction to achieve compliance with the June order and uphold the running of a fine at that rate from March 21, 1985, until the last of the 410 drums has been removed. We will consider $600 per day—the balance of the $1,000 per day fine—appropriate as a coercive sanction to achieve compliance with the October order; however, we will remand to the District Court for determination of the appropriateness of having that fine run for any period after March 21, 1985. If the District Court determines that as of March 21 the defendants lacked the financial ability to comply fully with the October order, it shall adjust the sanction downward to reflect an appropriate sanction for non-compliance with the October order to whatever extent it determines compliance could have been made; in that event, the fine will accrue after April 20 (30 days after the contempt adjudication) and continue until defendants comply with the October order to the extent determined by the District Court to be warranted under the circumstances now known. In making this determination, the District Court shall bear in mind the caution expressed in our opinion affirming the October order: "The injunctive remedy is an equitable one; that abatement expenses may become prohibitive and disproportionate therefore may be taken into consideration." *New York v. Shore Realty Corp.,* *supra,* 759 F.2d 1053. The $600 portion of the coercive daily fine may be entirely eliminated if circumstances warrant. On the other hand, if it appears that compliance with the October order in full does not impose an inequitable burden upon the defendants, then the District Court may impose a $600 a day fine from April 20, 1985, until defendants enter into a contract to achieve such full compliance and begin actual removal pursuant to the contract; the District Court may even increase the amount of the daily fine, prospectively from the date of its adjudication upon remand, in the event that it determines that full or partial compliance is equitable and that a higher coercive sanction is prospectively warranted. Careful fact-finding concerning removal costs and the defendants' financial resources is required as well as a sensitive exercise of discretion in determining the extent to which compliance with the October order may fairly be required.

We urge the District Court and the parties to bear in mind that, though the litigation must ultimately determine which costs must be borne by which parties (including those third parties whom the defendants have claimed against and whose liability remains to be determined), the more immediate objective is to remove the chemicals from the property. Protracted litigation over contempt sanctions may be far less effective toward that end than prompt action by the defendants and the State to undertake various phases of the task, leaving issues of cost reimbursement for later determination.

On the State's cross-appeal, we see considerable merit in the State's contention that, as the party for whose benefit the three orders were issued, it, and not the United States Treasury, is entitled to receive the coercive fines. However, we cannot determine on this record on what basis the District Court decided to make the fines payable to the United States, and we are reluctant to reject that disposition of the money without knowing the District Court's rationale. We will therefore leave this issue for further consideration by the District Court upon remand.

Accordingly, we affirm the adjudication of contempt, we revise the coercive contempt sanctions to the extent stated herein,

and we remand to the District Court for further proceedings consistent with this opinion. No costs. The mandate shall issue forthwith.