# PINELLAS COUNTY, et al. v MARTIN, et al.

## Case No. 82-13019-17

Sixth Judicial Circuit, Pinellas County

August 7, 1987

## APPEARANCES OF COUNSEL

**John T. Allen, Jr.,** for plaintiffs.

**John W. Berry,** for defendants.

**Michael J. Keane,** for plaintiffs.

## OPINION OF THE COURT

FRED BRYSON, Circuit Judge.

*ORDER GRANTING PLAINTIFF, PINELLAS COUNTY'S, MOTION AND SUPPLEMENTAL MOTION TO HOLD JAMES F. "BOBBY" MARTIN IN FURTHER CONTEMPT, TO ISSUE ORDER OF COMMITMENT PURSUANT TO FINAL JUDGMENT, TO REQUIRE JAMES F. "BOBBY" MARTIN TO SIGN CONTRACT FOR REMOVAL OF POLLUTION MATERIAL OR IN THE ALTERNATIVE TO ORDER CONTRACTOR TO REMOVE POLLUTION MATERIAL PURSUANT TO TERMS OF CONTRACT, AND FOR OTHER JUDICIAL RELIEF*

THIS CAUSE is before the Court on Plaintiff, PINELLAS COUNTY'S, Motion and Supplemental Motion to Hold James F. "Bobby" Martin in Further Contempt, to Issue Order of Commitment Pursuant to Final Judgment, to require James F. "Bobby" Martin to Sign Contract For Removal of Pollution Material or in the Alternative to Order Contractor to Remove Pollution Material Pursuant to Terms of Contract, and For Other Judicial Relief.

The original Motion filed by Pinellas County was heard on July 24, 1987. At that time the Court heard admissions of counsel for the Defendant, JAMES F. "BOBBY" MARTIN, concerning the fact that Defendants agreed as to form of the contract with a contractor, C. P. Ward, Inc., to remove the pollution material from the area known as the Bobby Martin Borrow Pit. The transcript of that hearing will stand as to what occurred at the proceedings, however the Court found that, and it was admitted by the Defendant, JAMES F. "BOBBY" MARTIN'S, counsel that, in fact, a contract had been negotiated with C. P. Ward, Inc. for the purpose of complying with this Court's Final Judgment and those Orders entered by the Honorable Maynard F. Swanson, Circuit Judge, in this cause, when he was assigned to this case, both Orders being dated May 7, 1987, copies of which were attached to Plaintiff's original Motion. The Court has also considered as true the facts and findings made by Judge Swanson in those Orders. In sum, the Court has reviewed the "Supervised Contract For Removal of Pollution Material From James F. "Bobby" Martin Borrow Pit, Cell IV, And Surrounding Areas" and has found that the contract is most reasonable and is sufficient to comply with this Court's Order in its Final Judgment requiring removal of the pollution material.

The Court advised defense counsel that the Defendant, JAMES F. "BOBBY" MARTIN, should seriously consider the signing of the contract which would purge him of contempt and relieve him of any further confinement in the Pinellas County Jail. *The contract does not require Defendants to pay any money, but simply exchange good dirt*

2

*for pollution removal and full compliance with this Court's Orders and Final Judgment.* The Court then set for further hearing Plaintiff's Motion for July 31, 1987. At that hearing the Defendants failed to appear, but filed pleadings in response to Plaintiff's Motion. The Defendants, on July 30, 1987, had filed a motion in the Second District Court of Appeal seeking a Writ of Prohibition to prohibit this Court from holding the hearing on July 31, 1987, which motion was denied.

At the hearing on July 31, 1987, the Court ordered the County to file a Supplemental Motion further clarifying its position as to the relief and remedies it is seeking in enforcement of this Court's Final Judgment, stating the authority upon which the County relief for such relief, and providing opposing counsel with a proposed Order which the County is requesting the Court enter on August 7, 1987.

The Court notes that the District Court of Appeal by Order has ruled that the Plaintiff, PINELLAS COUNTY, during the pendency of an appeal by the Defendant, JAMES F. "BOBBY" MARTIN, may enforce the judgment entered by this Court since no supersedeas bond or stay has been entered. The Court views the denial of the Writ of Prohibition as a continuing affirmance by the District Court of its position in this regard.

Based upon the previous rulings by Judge Swanson, the District Court, and this Court's Final Judgment, the Court finds that a grave and serious problem exists since no substantial pollution material, which is seeping into the aquifer system, has been removed since the entry of this Court's Final Judgment on November 24, 1986. Because of the continued pollution of Pinellas County's main water supply, the Court deems it necessary at this juncture to rule upon all of the issues of enforcement of its judgment so that the parties may be properly guided as to their conduct in the future and, if the Defendants feel aggrieved, the District Court may consider the rulings of this Court as to each of the issues placed before the Court for enforcement of the Court's Final Judgment and the subsequent Orders entered by Judge Swanson.

Therefore, based upon this Court's determination at its hearing on August 7, 1987, and the Court's further determination that it should rule in the alternative so that the pollution material be removed from the Bobby Martin Borrow Pit *with all due and deliberate speed* so that the public health and water supply of Pinellas County will be protected, it is,

ORDERED AND ADJUDGED as follows:

1. Under and pursuant to Rule 1.570(c)(3), of the Florida Rules of

3

Civil Procedure, this Court hereby appoints K.B.H. Construction Co., Inc., a Florida corporation, to remove the pollution material from the James F. "Bobby" Martin Borrow Pit, Cell IV, and surrounding areas pursuant to the terms of the unsigned agreement between James F. "Bobby" Martin and Patricia Martin, his wife, and C. P. Ward, Inc., which is attached to this Order as Exhibit "A". The Court finds that K.B.H. Construction Co., Inc. is a subsidiary of C. P. Ward, Inc., and that K.B.H. Construction Co., Inc. has voluntarily submitted itself to the jurisdiction of the Court for the purpose of being appointed under Rule 1.570(c)(3), Fla.R.Civ.P., for the purpose of the removal of the pollution. C. P. Ward, Inc. is being substituted by K.B.H. Construction Co., Inc. at the request of C. P. Ward, Inc.

Under such circumstances, since the pollution material will be removed by Court Order and under said ruling the Defendant, JAMES F. "BOBBY" MARTIN, will be performing through K.B.H. Construction Co., Inc. the removal of the pollution material under Judge Swanson's Order on hearing on Defendant, JAMES F. "BOBBY" MARTIN'S, motion that order of contempt not be enforced because of inability or impossibility of performance, dated May 7, 1987, the Defendant, JAMES F. "BOBBY" MARTIN, shall be deemed purged of his contempt found by this Court in its Final Judgment and in Judge Swanson's Order of May 7, 1987, and is hereby ordered released from confinement subject to further motions to be filed by Plaintiff, PINELLAS COUNTY, in the event the Plaintiff, PINELLAS COUNTY, shall determine that further violations of this Court's existing Orders and Final Judgment have been violated by the Defendant, JAMES F. "BOBBY" MARTIN. *Martin v Pinellas County,* 444 So.2d 439 (Fla. 2d DCA 1983); *See United States v Sami,* (D.C. Md.) 14 ELR 20431; Rule 70 of the Federal Rules of Civil Procedure and commentary thereon.

2. In the event the Defendant, JAMES F. "BOBBY" MARTIN, shall appeal and obtain a stay of this Court's Order appointing K.B.H. Construction Co., Inc. to remove the pollution material from the Bobby Martin Borrow Pit then, in such event, the Court pursuant to Rule 1.570(c)(2), Fla.R.Civ.P., finds the Defendant, JAMES F. "BOBBY" MARTIN, in contempt of this Court's Orders and Final Judgment for failure to execute and sign the contract negotiated with C. P. Ward, Inc. and to sign said contract with C. P. Ward, Inc.'s subsidiary K.B.H. Construction Co., Inc. The Court therefore imposes a fine of $400.00 per day commencing the day after the date of this Order for the Defendant's failure to sign such contract, until such contract is signed and the work is commenced by the contractor,

4

K.B.H. Construction Co., Inc. *See New York v Shore Realty Corp.,* 15 ELR 20431 (2d Cir. 1985).

3. In addition thereto, the Court in its Final Judgment of November 24, 1986, has found that because of the recalcitrance of the Defendant and because the Court further finds that through the findings of Judge Swanson in both of his Orders of May 7, 1987, and the hearings held by this Court on Plaintiff's pending Motion and Supplemental Motion, that James F. "Bobby" Martin has been granted a substantial length of time in which to remove the pollution as soon as possible from his borrow pit areas, the Court hereby enforces the Final Judgment by providing that should the Defendant, JAMES F. "BOBBY" MARTIN, obtain a stay or reversal of this Court's Order appointing K.B.H. Construction Co., Inc., that upon immediate presentation by the Plaintiff, PINELLAS COUNTY, showing unto the Court that such legal action has been taken, the Court shall immediately sign an Order requiring the Defendant to submit himself for confinement in the Pinellas County Jail until all of the pollution has been removed from the borrow pit and Cell IV areas and the meeting of the other conditions of said Orders as required by this Court's Final Judgment in paragraph 68, page 36 of the Final Judgment. No Order of continuous confinement shall be entered unless the District Court should stay or otherwise reverse this Court's Order implementing the provisions of Rule 1.570(c)(3), Fla.R.Civ.P.

4. The Court confirms again the fact that the Defendant, JAMES F. "BOBBY" MARTIN, does have the ability to comply with this Court's Final Judgment requiring removal of the pollution material from the James F. "Bobby" Martin Borrow Pit and surrounding areas for the reasons stated by Judge Swanson in his two Orders of May 7, 1987, and the fact of the existence of the C. P. Ward, Inc. contract which K.B.H. Construction Co., Inc. is willing to sign for the pollution removal.

5. Finally, the Court finds that by entering this Order upon all three (3) issues raised by the Plaintiff, PINELLAS COUNTY, in its Motion and Supplemental Motion, that the proceedings in the lower court shall of necessity be terminated at this juncture so that if the Defendant, JAMES F. "BOBBY" MARTIN, should desire to appeal this Court's ruling, the District Court of Appeal shall be appraised of the alternative relief granted to the Plaintiff, PINELLAS COUNTY, so that the Appellate Court can have before it all of the Court's rulings on the various alternative orders on enforcement of this Court's Final Judgment for the District Court's disposition.

DONE AND ORDERED in chambers, at St. Petersburg, Pinellas County, Florida, this 7th day of August, 1987.

6

**EXHIBIT A**

*COURT SUPERVISED CONTRACT FOR REMOVAL OF POLLUTION MATERIAL FROM JAMES F. (BOBBY) MARTIN BORROW PIT, CELL IV, AND SURROUNDING AREAS*

THIS AGREEMENT made this ____ day of June, 1987, by and between JAMES F. (BOBBY) MARTIN and PATRICIA MARTIN, his wife, hereinafter referred to as the "Martins," and C.P. WARD, INC., a corporation, hereinafter referred to as the "Contractor":

WITNESSETH for and in consideration of the mutual covenants, conditions, and agreements made herein, and for other good and valuable consideration, receipt of which is hereby acknowledged, the Martins and the Contractor hereby agree as follows:

1. The purpose and intent of this agreement is to grant to Contractor the right to enter upon the area known as the "Bobby Martin Borrow Pit," "Cell IV," and all other surrounding lands owned by the Martins in order to comply with the orders and judgment of the Circuit Court, in the Case of *Pinellas County, et al. v. James F. Martin, et al.,* Circuit Civil No. 82-13019-8; now pending in the Circuit Court in and for Pinellas County, Florida, namely, the Final Judgment of the Court dated November 24, 1986, the Court's Consent Mandatory Injunction entered on February 27, 1985, the Court's Order on hearing on defendant, James F. (Bobby) Martin's Motion That Order Of Contempt Not Be Enforced Because Of Inability or Impossibility of Performance dated May 7, 1987, and the Court's Order on Plaintiff's Motion For Contempt Of James F. "Bobby" Martin dated May 7, 1987. Any conflict between this agreement and with these particular orders of the Court shall be resolved in favor of the language of this agreement rather than the orders on the condition that this agreement receives the approval of the Court described above.

2. All actions of the Contractor and the defendants in carrying out the executory provisions of this contract shall be directly performed under the strict supervision of the Circuit Court and Circuit Judge assigned to the above-described case. Any and all amendments, extensions of time, or other matters involving the removal of pollution material from the Bobby Martin Borrow Pit, Cell IV, and the surrounding areas of the Martins' property shall only be accomplished by hearing and order of Court.

3. The parties agree that there exists an undetermined amount of pollution material which is in the area known as the "Bobby Martin Borrow Pit," "Cell IV," and the surrounding areas as more particularly described in the Court's Consent Mandatory Injunction, a copy of

**7**

which is attached to this contract as Exhibit "A". The Contractor agrees to remove all pollution material to the satisfaction of the Court, as ordered by the Court in the above-described Orders and Final Judgment upon the terms and conditions as described in this contract or agreement.

4. The Contractor agrees that it will exercise the utmost good faith and due diligence in removing the pollution material from the above-described areas as soon as possible consistent with the terms of this agreement.

5. The Contractor agrees to undertake all construction activities necessary to comply with the above-described Orders and to remove the pollution material from the areas described in said Orders. The Contractor agrees that such pollution material shall be removed and disposed of more than two miles from the circumference of Pinellas County's Eldridge-Wilde Wellfield and Pinellas County's East Lake Road Wellfield. The Contractor agrees to de-water the area, remove the pollution material and debris, and pollution underneath the "Bobby Martin Borrow Pit" and any other pollution material by the most cost effective and in the most expeditious manner possible.

6. The Contractor shall be paid for the removal of the pollution material as required by said Orders by removal and sale of clean fill dirt. The amount of clean fill for payment shall be obtained and removed from either the Cell IV area or the land owned by the Martins which borders immediately to the east of the area known as the "Bobby Martin Borrow Pit" which shall be excavated to a depth of two-feet above the limestone aquifer. Whenever possible, the dirt shall be obtained from under the pollution material in the area known as Cell IV. Under no conditions shall dirt be removed from the Martin property which is lower in elevation than two-feet above the limestone aquifer, with the exception of the area known as the "Bobby Martin Borrow Pit" which shall be excavated to the limestone aquifor and then refilled with clean dirt to a level approximately 2 feet above the limestone aquifor, with dirt from the eastern wall area of the Bobby Martin Borrow Pit. The hammock or group of trees lying to the east of the Bobby Martin Borrow Pit shall not be destroyed or excavated. The two individual trees lying to the east of the Bobby Martin Borrow Pit may be removed if necessary.

The amount of clean fill dirt which is to be removed by the Contractor in full payment for the work to be accomplished shall be the amount of clean fill dirt which shall repay, upon its sale, the Contractor for all of the costs and work, removal of the pollution material, and restoration of land required by the Court Orders de-

8

scribed above. The cost of the work for which the Contractor shall be repaid in clean fill dirt shall be determined by the cost schedule which is attached to this contract as Exhibit "B". A full and accurate accounting of such costs, charges, pollution and debris removal, and clean dirt removal, shall be made to the Court and parties at the time of completion of the work.

7. The Contractor agrees that the work shall not be deemed complete until certification by Pinellas County to the Court has been filed with the Court and accepted by the Court that all pollution has been removed from the Martin property described above. Work shall ultimately be deemed complete when the Contractor has removed all of the clean fill dirt required under the contract and has been fully paid and the Circuit Court has entered an Order discharging the Contractor as having completed satisfactorily the terms and conditions of this agreement.

8. Removal of pollution material and debris shall include that area owned by the Martins on the south side of Keystone Road as more particularly described in the Consent Mandatory Injunction, Exhibit "A" to this contract.

9. Since the Contractor will be required to pay for a dump site for the disposal of the pollution material at the time of its disposal, it is agreed that the Contractor shall have the right to *simultaneously* remove both pollution material and clean fill dirt on an equal cost basis so that the Contractor may pay for the disposal of the pollution material at the time of its actual disposal. It is agreed that under this formula, the pollution material on the Martin property will be removed at the earliest and most expeditious and practicable date. The parties agree that the Court described in paragraph 1 above must approve this contract and the procedure outlined in it prior to Contractor commencing to remove any clean fill dirt.

10. The Contractor agrees to complete the work involved and removal of the pollution material within 120 days from the date of this agreement; provided, however, that should unexpected events occur or should the physical conditions become such that it makes it impossible for the Contractor to complete this contract within the 120 day period, the Contractor shall have the right to request permission of the Court for an extension of time for completion of the contract based upon the grounds of good faith and good cause.

11. This contract is conditioned upon its approval by the Circuit Court in the case of *Pinellas County, et al. v. James F. Martin, et al.,* described above.

**9**

12. As provided in the Consent Mandatory Injunction, soil along both sides of the road which leads from Keystone Road into the original Bobby Martin Borrow Pit shall be excavated to a depth of 8-feet. The Contractor shall then utilize soil excavated from the eastern side of the original borrow pit to obtain additional clean fill material for the purpose of replacing the soil excavated along the western edge of the roadway. The Contractor shall also properly slope with clean fill material the western edge of the excavated area so that the natural terrain of the area shall be maintained and no injury or damage shall occur to the land of the Eldridge-Wilde Wellfield. Clean fill used in the sloping of the western edge of the original borrow pit may also be obtained from the eastern side of the original borrow pit. As provided in the Court's Consent Mandatory Injunction, Contractor should form a 20 foot wide buffer area on the west side of the Bobby Martin Borrow Pit, and a 2-foot berm shall be constructed around the completed excavated area to prohibit surface runoff to the excavated area. The berm shall be 2-foot in height with a flat surface 2-feet wide on top with sloping conforming to the original requirements of Hillsborough County as to maintenance and completion of a borrow pit.

13. The Contractor and Martins agree that Pinellas County, its employees, representatives, attorneys, and consultants, shall have the right to monitor all of the activities of the Contractor and shall be free to have complete access to the lands of the Martins during the time that this contract or agreement is in effect. Representatives of Pinellas County shall be free to document the removal of materials, their storage and ultimate disposal, and shall further be free to take photographs and collect samples for laboratory and chemical analysis, and pursue any other means of monitoring which they shall choose. Pinellas County shall also be free to acquire any piece or portion of the foreign material or pollution removed from the property for the purpose of photographing testing, storage, and preservation. The Contractor shall at all times honor this right by Pinellas County and its representatives and shall, in all instances, cease work long enough for the retrieval or removal of any foreign substances or pollution material desired by Pinellas County. In the event that representatives of Pinellas County who are monitoring removal of the foreign substances or pollution which is buried on the property shall determine and advise the Contractor that they believe that hazardous and dangerous materials have been removed, or are about to be removed, or have been uncovered, the Contractor agrees to cease operations in such area until the hazard is removed satisfactory to both parties. If the parties cannot agree, work in the immediate area of the claimed hazard shall cease

10

and the parties shall immediately appear before the Court on an emergency basis to resolve any differences the parties may have as to the existence of any hazard or if a hazard is found to exist, the proper means of disposal of such hazard.

(a) Martins, in consideration of the unusual circumstances and problems facing Contractor in performing the work contained in this contract, and in consideration of the additional specific and unique matters concerning this project which are described in this subparagraph 13(a), agree and covenant not to sue Contractor or any of its agents, employees, shareholders, directors, authorized representatives, affiliates, subordinates, or any other person or party in privity with Contractor, with the sole and limited exception of Pinellas County, as the result of or for any of the work performed pursuant to this contract or for the removal of any pollution material, or for the removal of any fill dirt, clean or otherwise, or for any other event, incident, accident, occurrence or happening relating to, or arising out of, Contractor's dealings with the Martin; provided, however, that this covenant not to sue shall not apply to any willful or wanton conduct, acts or actions on the part of Contractor against Martins nor to any fraud perpetrated by Contractor against Martins.

(b) Martins agree that the work to be done under this contract by the Contractor is to be done under Court Order and supervision, and that any questions concerning DER or Hillsborough County or any other governmental agency claiming jurisdiction over the Martin property or any matters pertaining to any state and/or local agencies shall be resolved by the Court and the Martins, and that the Contractor shall have no liability in regard to such claims or interventions by any such governmental entities. Any such governmental entity interference shall not result in a loss of funds or amounts due and owing to the Contractor under this agreement. In the event the Contractor is prevented by any agency or governmental action from completion of the work, then the Contractor shall be relieved of any further responsibility under the contract and shall be discharged by the Court.

(c) In consideration of the specific consideration given by Contractor, specifically, that special consideration set forth in paragraph 13(a) above, and the further consideration of Contractor's promises set forth in paragraphs 17 and 18 below, Martins agree to indemnify Contractor, and hold Contractor harmless, for any and all claims, demands, lawsuits, fines, criminal or civil, demands or any other requests for any other parties or persons, including the Martins themselves, and any and all state, federal and local governmental

**11**

agencies, or any other person, partnership, firm, entity or corporation, including, but not limited to, neighbors, citizens of Hillsborough or Pinellas County, or any other person whatsoever, that arise out of or are in any way related to Contractor's performance of the work described in this Agreement, or any relationship or dealing between Contractor and the Martins or the Contractor and Pinellas County, to a maximum limitation of $10,000,000.00. The parties agree that the consideration set forth in paragraphs 13(a), 17 and 18 of this agreement constitutes sufficient and adequate consideration under Section 725.06 Florida Statutes, if applicable.

(d) In the event that any litigation arises out of this contract or the performance of this contract, the parties agree that in any such litigation the prevailing party shall recover from the nonprevailing party all of its attorneys' fees and paralegal fees incurred in either prosecuting or defending such litigation. This also includes any such fees on appeal.

(e) Martins agree that they have reviewed this contract, and have had the advice of competent legal counsel in the review of such contract, that they signed such contract of their own free will and without duress, coercion, economic or otherwise, and that they acknowledge that the performance of this work by Contractor is in their best interest, and to their benefit.

14. It is understood that the intent of this contract is to allow removal of clean fill material by the Contractor in lieu of cash payment from the Martins for completion of the prior Orders of Court referred to hereinabove in which the Court has ordered removal of pollution material.

15. The Contractor agrees to commence de-watering of the excavated area or borrow pit or Cell IV and to immediately commence excavation and removal of the pollution material and debris in Cell IV, and to immediately commence removal of clean fill dirt material for the payment for the removal of such pollution material on the eastern portion of the area known as the "Bobby Martin Borrow Pit," within ten (10) days from the execution of this contract by the Martins and approval by the Court. All such activity shall commence immediately upon the signing and approval by the Court of this contract.

16. Working hours shall be 7:00 A.M. to 5:30 P.M., seven (7) days per week, with one-half hour for lunch. The Contractor reserves the right to increase working hours to allow Contractor to minimize payroll overtime by utilizing two (2) crews each working a 40 hour work week.

12

17. Contractor agrees to provide to Martins, prior to commencing the work described in this agreement, with a certification that Contractor has made arrangements with an appropriate facility for the commercially responsible disposal of the pollution material.

If Contractor, after using reasonable efforts, is unable to obtain arrangements for such a disposal facility or location, Contractor agrees to use its reasonable efforts to find and obtain a substitute commercially reasonable disposal facility or location, and will certify to Martins and Pinellas County whether Contractor can or cannot reasonably obtain such a facility. If Contractor cannot locate, after reasonable efforts, a commercially reasonable disposal facility or location, the parties agree that they will immediately, either jointly or separately, apply to the Court described in paragraph 1 above to be forever discharged from any obligation under this contract.

If Contractor does locate and commence to perform this contract by utilizing a commercially reasonable disposal facility or location, and thereafter that location or facility becomes unavailable or commercially unreasonable for reasons beyond the control of Contractor, Contractor agrees to use reasonable efforts to locate and obtain a substitute commercially reasonable disposal facility or location. If Contractor is unable to locate and obtain the use of such a commercially reasonable disposal facility or location, then the parties agree that they will apply to the Court described in paragraph 1 for discharge from their respective obligations under this agreement.

If a disposal site is utilized that charges Contractor a dumping rate more than $55.00 per truckload of pollution material, the parties agree to amend the charges found on the schedule attached hereto as Exhibit B to reflect the actual charge, and, further, agree that if they cannot reach such agreement within five (5) days of the initial notification that such a higher dumping rate is being, or will be, charged, the parties agree to apply to the Court described in paragraph 1 above to establish the rates to be charged by Contractor for such dumping in Exhibit B. Such application and determination shall be on as expedited a basis as the Court will permit.

18. Contractor agrees to provide to Martins, after written request from Martins' counsel, copies of all contracts entered into between Contractor and any third party for the disposal of the pollution material or the sale of the fill dirt. This shall not include any employment contracts with Contractor's employees or any type or form of business secret or trade secret document.

19. The terms of this contract constitute the entire agreement

13

between the parties and no oral agreement in the future shall serve to amend the terms of this contract. The only manner in which the terms of this contract or agreement may be modified is strictly by Court order and approval after due notice and hearing to all parties.

DATED this ____ day of June, 1987.

_____

_____ _____
Witnesses as to JAMES F. MARTIN
James F. Martin

_____ _____
Witnesses as to PATRICIA MARTIN
Patricia Martin

STATE OF FLORIDA

COUNTY OF _____

I HEREBY CERTIFY that on this ____ day of _____, 1987, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgments, personally appeared JAMES F. MARTIN and PATRICIA MARTIN, his wife, to me known to be the persons described in and who executed the foregoing instrument and they acknowledged before me that they executed the same as their free act and deed.

_____
Notary Public

My Commission Expires:

C.P. WARD, INC.

_____

_____ By _____
Witnesses as to Its Vice President
C. P. Ward, Inc.

STATE OF FLORIDA

COUNTY OF PINELLAS

I HEREBY CERTIFY that on this ____ day of June, 1987, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgments, personally appeared MATTHEW A. KOERNER, who is the Executive Vice President of C.P. WARD,

14

INC., to me known to be the person described in and who executed the foregoing instrument and he acknowledged before me that he executed the same as his free act and deed.

_____
Notary Public

My Commission Expires: