**Douglas S. EVANS, Trustee, Appellee,**

v.

**Denzil ROBBINS, Roberta Robbins, Finley River Ranch Company, and The Inn Group, Inc., Appellants.**

No. 89–1108.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1989.

Decided March 5, 1990.

Paul G. White, Springfield, Mo., for appellants.

Mathew W. Placzek, Springfield, Mo., for appellee.

Before BOWMAN, Circuit Judge, ROSS and HENLEY, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Denzil and Roberta Robbins (debtors) and their business entities appeal from the order of the district court[1] affirming the decision of the bankruptcy court,[2] that they turn over assets to trustee Douglas Evans pursuant to 11 U.S.C. § 542. We affirm as modified.

Creditors filed an involuntary chapter 7 bankruptcy petition against debtors on November 16, 1981. Debtors were held in contempt of court on May 8, 1985, for failure to file schedules and statements. On August 28, 1986, the trustee filed an adversary complaint to compel turnover of assets under 11 U.S.C. § 541(a)(1), (2) and (6). It was the trustee's position that debtors possessed many hidden assets on the date of the bankruptcy filing, and that those assets had since been traded or converted into present assets, all of which were proceeds of pre-petition assets. Debtors failed to cooperate with discovery and produced only three of seventeen requested financial statements; they failed to completely answer interrogatories. To say they have been uncooperative is a gross understatement.

On September 10, 1986, the bankruptcy court issued a preliminary injunction enjoining debtors from transferring property. Debtors had title to registered quarter horses valued at $200,000 before the bankruptcy petition, but a subsequent financial statement listed their worth as $423,763. Debtors did not explain the identity of the present horses. They also encumbered property known as the Finley River Ranch on September 17, 1986, in direct violation of the order. Debtors further defied the court's order in October 1986 when they exchanged shares of Victor Federal Savings & Loan stock for Spectrum Cellular Stock. The buyer of the stock testified that Denzil represented he owned the shares of stock and had full power to exchange them. Debtors then traded the shares of Spectrum Cellular stock for property in Galveston, Texas, and a pecan farm in Mississippi. Debtors were cited for contempt and the court's restraining order was affirmed on February 5, 1987, but debtors thereafter mortgaged the Texas property and pecan farm for approximately $150,000.

Denzil made several false statements in a deposition on October 27–28, 1987. He stated he did not remember which assets he owned in November 1981, thereby concealing the Texas and pecan farm properties. He said his wife had purchased a 1987 Mercedes automobile free and clear. The day after the deposition, he mortgaged the car and purchased a $40,000 certificate of deposit in the name of his daughter Ashley.

Further evidence adduced at the trial in February 1988 established that 5.6 acres of other property located in Oklahoma was titled in the debtors' names for a brief period in April 1986. There was no evidence that this Oklahoma property was owned by the debtors before the bankruptcy date of November 11, 1981. In Denzil's deposition he testified that his corporation, First Federal Financial, Inc., never had any assets. At trial, however, he admitted that the corporation owned the 5.6 acres in Oklahoma worth approximately $2,000,000. The property had been mortgaged in August 1987. Debtors filed suit in Colorado on December 17, 1987, for specific performance of a contract involving exchange of this property for a Colorado ranch. A 1985 Jeep Cherokee was transferred to Denzil as part of the property trade. A $100,000 cash bond was posted in the lawsuit. Denzil testified that he had pledged another asset, a horse named Mr. Super Smooth, to a third party. It was made apparent, however, that the horse never left his possession.

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

2. The Honorable Frank W. Koger, United States Chief Bankruptcy Judge for the Western District of Missouri.

Denzil contended that his assets at the time of the bankruptcy petition were only $65,455, yet the trustee introduced Exhibit 132, a financial statement summary showing pre- and post-petition assets. The exhibit showed an increase in equity (net worth) from approximately $2,000,000 on June 2, 1981 (pre-petition), to more than $15,000,000 on December 31, 1986. Income tax returns showed comparatively very little income or capital gains from 1980 through 1986: 1980–$(33,465); 1981–$(3,-352); 1982–$(4,099); 1983–$(3,953); 1984–$476; 1985–$96,057; 1986–$80,096.

The bankruptcy court issued a memorandum opinion on March 8, 1988, *In re Robbins,* 83 B.R. 688 (Bankr.W.D.Mo.1988), and an order on June 20, 1988. The court found that debtors fraudulently attempted to hide or dispose of assets through creation of fourteen corporate alter ego business entities, and ordered all assets turned over with title to vest in the trustee. The court discredited Denzil's only defense, his testimony: "[T]o ask the Court to believe this unexplained but miraculous economic recovery following the unexplained but catastrophic economic loss is ludicrous if not insulting." *Id.* at 691. The court held that debtors' post-bankruptcy assets were not derived from work or labor, and mentioned that Roberta brought no substantial assets into the marriage. She did not testify. The court believed the trustee had made a significant showing and noted that the debtors' hands were quicker than the court's eye. In its June 1988 order, the court drew an adverse inference from debtors' lack of cooperation and concluded the evidence debtors failed to produce would have shown their existing assets and corporate assets to be of the bankruptcy estate or derived from proceeds of the same, citing *Aetna Casualty & Surety Co. v. Reliable Auto Tire Co.,* 58 F.2d 100, 104 (8th Cir.1932). The court acknowledged:

> But the Trustee, without that participation the law requires of parties such as the production of documents, answering interrogatories truthfully and completely, and giving of truthful testimony by deposition or in court, will never be able to trace definitively what happened

to the assets that the debtor possessed on November 16, 1981.

*In re Robbins, supra,* 83 B.R. at 693. Regardless, the court ordered turnover of the above assets plus an art collection and all assets in debtors' or their corporate names which were in existence but not known to the trustee.

The district court affirmed and found that the doctrine of continued possession applied. It specifically held that the bankruptcy court did not shift the trustee's burden of proof, but under the presumption, correctly placed an evidentiary burden on the debtors to explain when and how their possession of the pre-bankruptcy assets with a net equity of at least $1,642,612 ceased to exist. The district court found that the bankruptcy court was entitled to draw a negative inference from debtors' failure to produce documents or make explanations, citing *Brown v. Cedar Rapids and Iowa City Ry. Co.,* 650 F.2d 159, 162 (8th Cir.1981). On appeal, debtors challenge the district court's allocation of the burden of proof and application of the doctrine of continued possession.

Our analysis begins with the burden of proof:

> [T]he burden of proof in a turnover proceeding is at all times on the receiver or trustee; he must at least establish a *prima facie* case. After that, the burden of explaining or going forward shifts to the other party, but the ultimate burden or risk of persuasion is upon the receiver or trustee.

*Gorenz v. Illinois Dept. of Agriculture,* 653 F.2d 1179, 1184 (7th Cir.1981) (quoting 2 *Collier on Bankruptcy,* ¶ 23.10 (14th ed. 1976)). *See also Maggio v. Zeitz,* 333 U.S. 56, 63–64, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948). "The quantum of evidence necessary to satisfy the trustee's burden of persuasion will necessarily vary according to the circumstances of individual cases." *Gorenz, supra,* 653 F.2d at 1184. As part of a prima facie case, the trustee must demonstrate by clear and convincing evidence that the assets in question are part of the bankrupt's estate. *Maggio, supra,* 333 U.S. at 64, 68 S.Ct. at 405.

The trustee demonstrated through Exhibit 132, a listing of 123 assets, that numerous estate assets had disappeared and that other assets had appeared in their place. Debtors note that several items appearing on the December 31, 1986 balance sheet were not traceable back to the bankruptcy estate. The trustee contends he was not required to specifically identify each piece of estate property as it was converted from one form to another, citing *South Falls Corp. v. Rochelle*, 329 F.2d 611, 619 (5th Cir.1964). He stresses that subpoenaing bank records was a very long and tedious process and that he had to piece information together, yet we note that "[i]t is the burden of the trustee to produce this evidence, however difficult his task may be." *Maggio, supra*, 333 U.S. at 64, 68 S.Ct. at 405.

Debtors concede on appeal that viewed in the light most favorable to the trustee, sufficient evidence supports the bankruptcy court's findings regarding the Finley River Ranch and Mr. Super Smooth. We believe, in addition, that a prima facie case was clearly established with regard to the Oklahoma property and the Colorado litigation. Denzil contended that the seller carried the financing on the Oklahoma property when his corporation purchased it in 1987. Although documents verify this contention, we cannot ignore the inconsistency that this property was earlier titled in debtors' names and such was not disclosed in Denzil's deposition. Although at trial Denzil denied an ownership interest in the property for 1986, a December 31, 1986 financing statement claimed a $1,000,000 interest in it.

With regard to all the assets, the bankruptcy court properly placed the burden on the debtors to refute or give some rational explanation for the situation. The court found debtors unable to make an accounting. It is established that findings of fact by a bankruptcy court are not to be overturned unless they are clearly erroneous. *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985).

The district court relied in part on the doctrine of continued possession. The pre-

sumption of continued possession has been explained as follows:

> The legal presumption is that a bankrupt, who at the time of his adjudication in bankruptcy has and unlawfully holds back from his trustee in bankruptcy a part of his property, or of its proceeds, continues to hold it or them, but this presumption grows weaker as time passes, until it finally ceases to exist.

*Marin v. Ellis*, 15 F.2d 321 (8th Cir.1926). In *Marin*, the presumption was found inconclusive after the passage of ten months from the bankruptcy adjudication to the turnover petition. *See also Maggio, supra*, 333 U.S. at 66, 68 S.Ct. at 406 (questioning permissibility of possession inference after twenty months). The presumption is rebuttable by competent evidence of facts or circumstances. *Marin, supra*, 15 F.2d at 322. Debtors have not presented any such evidence. Rather, it is evident they now control proceeds of the property which the trustee alleges they unlawfully retained.

The trustee does not concede that the doctrine is inapplicable, but argues that regardless of its applicability, substantial evidence justifies the court's conclusion. The trustee would have us additionally rely on: (1) the doctrine of confusion of goods; (2) negative inferences drawn from debtors' concealment, false statements, and failure to produce documents; and (3) the prima facie case established by bank records. Although we have some difficulty with application of the doctrine of continued possession after a lapse in time of more than six years, we believe that when coupled with the trustee's other bases for justification of the turnover order, application of the doctrine is fair and reasonable. *See Maggio, supra*, 333 U.S. at 65, 68 S.Ct. at 406.

The trustee explains the confusion of goods doctrine as follows: If a party intentionally confuses goods to which he has title with goods to which others lay claim, then the burden is on that party to desegregate the goods. The doctrine has been applied to turnover proceedings involving proceeds from misappropriation of money. *See South Falls Corp. v. Ro-*

*chelle, supra,* 329 F.2d at 619 ("equitable concepts analogous to 'tracing' do not require identification of precise dollars as they go through various commercial mutations"). The party claiming that confusion occurred has the burden to show not only a confusion of goods but also that the mixing was done willfully with a fraudulent intent. 15A C.J.S. *Confusion of Goods* § 12 (1967). Both lower courts found the trustee had met this burden through financial statements produced. The factual basis of this finding is not clearly erroneous.

Debtors point out that many post-petition assets were acquired through loans and mortgages, and that these debts were not taken into account in the trustee's figures. At oral argument, their counsel propounded that the security for the property purchased was the property itself. Debtors, however, have failed to produce real estate contracts or loan files showing the source of funds utilized to purchase the property, or identify exactly which goods are their own, apart from those properly a part of the bankruptcy estate. We can only conclude that commingling occurred and find as did the bankruptcy court, that "any and all such assets are assets of the bankruptcy estate."

■ This court has also recognized that in certain circumstances, a negative inference arises from a defendant's failure to produce documents shown to have been in his possession. The inference is that the documents would have been damaging to the defendant. *Aetna, supra,* 58 F.2d at 104; *Brown, supra,* 650 F.2d at 162 n. 3; *Morris v. Holland,* 529 S.W.2d 948, 953 (Mo.App.1975). This adverse inference rule is applicable when the following factors are present: (1) it appears that the documentary evidence exists or existed; (2) the suppressing party has possession or control of the evidence; (3) the evidence is available to the suppressing party, but not to the party seeking production; (4) it appears that there has been actual suppression or withholding of evidence. 31A C.J.S. *Evidence,* § 156(2) (1964). The unfavorable inference resulting from refusal to produce documents is applicable when the

withholding party has been called on in the interest of the truth to produce the documents. *See Wall v. Lemons, Inc.,* 227 Mo.App. 246, 51 S.W.2d 194, 199 (1932). In the present case, Denzil admitted the existence of canceled checks and financial statements, yet neglected to produce them upon request.

While we do not believe the inference alone supports the district court's decision, we hold that the trustee presented its case through bank records, the doctrines of continued possession and confusion of goods, and negative inferences. The trustee's evidence was uncontroverted as debtors failed to produce requested documents such as canceled checks, deposit slips, bank statements, loan documents, warranty deeds, financial statements and letters, and stock certificates. Upon examination of the transcript and exhibits, we determine that a prima facie case was in fact established that property has been abstracted from the bankruptcy estate and is in the debtors' possession. We agree with the lower courts that debtors did not credibly refute the evidence presented by the trustee or corroborate their denial of present possession.

When juxtaposing income tax returns to financial statements, it is obvious that debtors contumaciously disobeyed the bankruptcy court's orders. We note as did the bankruptcy court, that it may be impossible to decipher exactly what happened to each of debtors' assets as Denzil's testimony was incredible. Giving due deference to the district court's findings of fact, we believe that sufficient substantive evidence supports its turnover order and determination that debtors concealed and diverted assets. The order is not unrealistic or unjust; it represents sound sense and good judgment. *See Maggio, supra,* 333 U.S. at 66–67, 68 S.Ct. at 406–07.

At oral argument, however, counsel for the trustee estimated that $300,000 worth of claims exist; that this amount plus attorney's fees, trustee's fees and court costs would settle the case. We affirm the order of the district court with this modification: Debtors have ninety days from the date of

this opinion to pay $300,000 plus attorney's and trustee's fees and court costs to the bankruptcy trustee. If this is not done, the district court's order is affirmed in its entirety.

It should now be obvious to the debtors that time has run out and that their outright fraud upon the creditors and the court can no longer be tolerated.

This opinion does not reach the questions of civil or criminal contempt or possible criminal charges under the bankruptcy act and is without prejudice to any such action heretofore or hereafter commenced.

Affirmed as modified. Mandate shall issue forthwith.