ROSS, Senior Circuit Judge.
This is an appeal by the FDIC in an interpleader action to determine the priority of claims and the division of funds inter-pled into the registry of the court. The interpleaded fund is approximately $300,-000 and is the surplus of the bankruptcy estate funds in the hands of the Trustee at the conclusion of the bankruptcy proceeding. Although the original interpleader petition was filed in state court on September 17, 1990, the circumstances giving rise to this interpleader action date back to November 16, 1981, when an involuntary bankruptcy petition was filed against Den-zil Robbins (Debtor) by his creditors.
The bankruptcy Trustee was unable to determine the extent to which the Debtor’s post-petition assets were part of or proceeds from the assets Debtor held on the date the bankruptcy petition was filed because of the Debtor’s refusal to cooperate. As a result, the Trustee filed an Adversary Complaint against the Debtor on August 28, 1986, to compel turnover of assets under 11 U.S.C. §§ 541(a)(1), (2) and (6). The bankruptcy court ruled in favor of the Trustee, finding that the Debtor had fraudulently attempted to hide or dispose of pre-petition assets, and accordingly permitted the Trustee to proceed against property which the Debtor clearly acquired sometime after 1981. In re Robbins, 83 B.R. 688 (Bankr.W.D.Mo.1988). That ruling was upheld by the federal district court.
The Eighth Circuit modified the district court’s order and ruled that the Debtor was required to pay $300,000 to satisfy the creditors’ claims against the bankruptcy estate. Evans v. Robbins, 897 F.2d 966, 970 (8th Cir.1990). The Trustee’s collection efforts proved successful and the bankruptcy *980 estate was large enough to generate a surplus of approximately $300,000 beyond the amount necessary for creditors, attorney and trustee fees and court costs. Although the surplus would ordinarily be turned over to the Debtor, 11 U.S.C. § 726(a)(6), before the Trustee had discharged his duty, he received notice of various claims to the fund which arose after the involuntary bankruptcy petition was filed in 1981. At the Trustee’s request, the bankruptcy court ordered this interpleader action in order to determine the rights of the various adverse claimants to the fund.
The only claimants involved in this appeal are the FDIC as successor in interest to Twin City Savings Bank, of West Monroe, Louisiana, the law firm of Neale, Newman, Bradshaw & Freeman, and James R. Doran, P.C. (collectively referred to as “the attorneys”), who represented the Debtor during the bankruptcy proceedings.
The FDIC claims priority to the inter-pleaded fund based upon two deficiency judgments it obtained against the Debtor. On July 6, 1990, the FDIC recorded these deficiency judgments in Jackson County, Missouri. The judgments were then used to authorize the issuance of two writs of execution and summons of garnishment on July 10, 1990, which were served upon the Trustee on July 11, 1990, thereby perfecting the FDIC’s judgment lien over the in-terpleaded fund.
In the meantime, on or about June 22, 1990, as it became apparent that the bankruptcy estate had generated a surplus beyond that necessary to settle creditors’ claims, the Debtor assigned the attorneys $180,000 as compensation for legal services rendered through the course of the bankruptcy proceedings. This verbal assignment was reduced to writing on July 9, 1990, and notice of the assignment was served on the Trustee the next day.
The federal district court held in relevant part that the claim for attorney fees has priority over the FDIC’s claim to the inter-pleaded fund, based on section 484.130 of the Missouri Revised Statutes, which provides:
The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client’s cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client’s favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.
Noting that the statute is remedial in nature and is to be applied broadly, the district court found that the attorneys’ lien arose at the time they entered appearances for the Debtor in the bankruptcy case and that their lien was perfected with respect to the “proceeds” without further action. Therefore, the court granted summary judgment in favor of the attorneys, concluding that this valid, perfected lien entitled the attorneys to priority over all subsequently perfected liens, including that of the FDIC.
We disagree with the district court that section 484.130 provided the attorneys with a priority lien over the inter-pleaded fund. Section 484.130 is expressly for the purpose of protecting counsel who undertake filing a lawsuit or a counterclaim on behalf of his or her client in the event the attorney is successful in recovering assets as a result of the action or counterclaim. It is clear under Missouri law that “before such a lien attaches, the attorney must commence an action or serve an answer containing a counterclaim.” Strubinger v. Mid-Union Indem. Co., 352 S.W.2d 397, 412 (Mo.Ct.App.1961); see also Munday v. Thielecke, 290 S.W.2d 88, 93 (Mo.1956). It is equally clear the attorneys did not seek affirmative relief for the Debt- or. To the contrary, the attorneys defended the Debtor against the Trustee in an action seeking turnover of assets, as well as in the underlying bankruptcy proceeding, and did everything they could to defeat *981 the collection of the Debtor’s assets by the Trustee.
Further, Missouri law provides that a lien under section 484.130 will not attach unless the judgment is in favor of, or provides pecuniary value to, the client. Ross v. American Tel. & Tel. Communication Corp., 836 S.W.2d 952, 956 (Mo.Ct.App.1992). See also Mo.Rev.Stat. § 484.130 (“a lien ... attaches to a ... judgment in his client’s favor”). The result of this adversarial proceeding was that the Debtor was ordered to turn over $300,000 in additional assets. Although the judgment was modified downward by this court on appeal, see Evans v. Robbins, supra, 897 F.2d at 970-71, that modification was a direct result of the Trustee’s revised estimate of the remaining claims against the bankruptcy estate and was in no way attributable to any effort by the Debtor’s attorneys.
We conclude that the district court erred in finding that the attorneys had a priority lien over the interpleaded fund by virtue of section 484.130.
The attorneys argue in the alternative that their claim in the interpleaded fund has priority over that of the FDIC by virtue of an assignment by the Debtor to the attorneys. The parties allege that on or about June 22, 1990, the Debtor assigned $180,000 to the attorneys as compensation for legal services rendered through the course of the bankruptcy proceeding. The assignment was verbal but was reduced to writing on July 9, 1990. Notice of the assignment was served on the bankruptcy trustee the next day.
The district court found that while the assignment between the attorneys and the Debtor was a valid assignment, it did not have the effect of granting the attorneys priority to the interpleaded fund. “The general rule is that the assignee of a non negotiable obligation occupies exactly the same position with respect thereto that his assignor occupied. Such assignee takes subject to all defenses that might have been made against it while in the hands of the assignor at the time of assignment.” United Finance Plan, Inc. v. Parkview Drugs, Inc., 250 S.W.2d 181, 184 (Mo.Ct.App.1952) (citations omitted); see also Vittert Constr. & Inv. Co. v. Wall Covering Contractors, Inc., 473 S.W.2d 799, 803 (Mo.Ct.App.1971).
Without addressing the issue of the validity of the assignment, we agree with the district court that any right of the Debtor to the interpleaded fund by virtue of the assignment is subordinate to other claimants, namely the FDIC.
Based on the foregoing we conclude that the district court erred in finding that the attorneys had a priority lien on the proceeds of the interpleaded fund. Accordingly, the judgment of the district court is reversed and remanded for further proceedings consistent with the views expressed in this opinion.