STUART, Senior District Judge.
 

 I.
 
 Introduction
 

 Defendant Denzil W. Robbins appeals from a judgment of conviction on four counts of concealing property subject to bankruptcy court jurisdiction and one count of making a false oath in violation of 18 U.S.C. § 152. Robbins was sentenced to concurrent prison terms of thirty-six months on each count. For the reasons discussed below, we reverse the convictions on the four counts of concealing property of the bankruptcy estate and affirm the conviction for making a false oath.
 

 II.
 
 Factual Background
 

 On November 16, 1981, creditors filed an involuntary chapter 7 bankruptcy petition against Robbins. Robbins was uncooperative. On August 28, 1986, the bankruptcy trustee, Douglas Evans, commenced adversary bankruptcy proceedings against Robbins to compel him to turn over certain assets to the bankruptcy estate. On Septem
 
 *392
 
 ber 10, 1986, Judge Koger issued a preliminary injunction enjoining Robbins from transferring or encumbering specified property, including the Finley River Ranch and the Victor Federal stock. Notwithstanding the preliminary injunction, Robbins executed a warranty deed on the ranch on December 17,1986. Robbins also exchanged the Victor Federal stock for Spectrum Cellular stock. This transaction occurred in late October or early November 1986. In December 1986, Robbins exchanged the Spectrum Cellular stock for beachfront property in Texas and a pecan farm in Mississippi. Robbins then used the beachfront property and the pecan farm as collateral for a loan. These transactions were conducted in direct contravention of the September 10, 1986 bankruptcy court order.
 

 This court has previously considered the adversary bankruptcy proceedings against Robbins. In that case, we affirmed the decision of the district court that affirmed the decision of the bankruptcy court
 
 [1]
 
 ordering Robbins to turn over assets to the bankruptcy trustee pursuant to 11 U.S.C. § 542.
 
 See Evans v. Robbins,
 
 897 F.2d 966 (8th Cir.1990).
 

 A federal grand jury subsequently returned a six count indictment against Robbins based on many of the same transactions that were before the bankruptcy court. Counts one through five charged Robbins with transferring or concealing property from the bankruptcy estate in violation of 18 U.S.C. § 152. Count six of the indictment charged Robbins with knowingly and fraudulently making a false oath in the bankruptcy proceeding in violation of 18 U.S.C. § 152. The jury returned a guilty verdict on all counts except one count of transferring or concealing certain property from the bankruptcy estate.
 

 Robbins appeals claiming there is insufficient evidence to sustain the conviction for transferring or concealing property from the bankruptcy estate and to sustain the conviction for making a false oath.
 

 III.
 
 Discussion
 

 A.
 
 Transferring Assets of the Bankruptcy Estate
 

 In the bankruptcy proceeding, Judge Ko-ger applied the doctrine of confusion of assets and concluded because Robbins had so commingled his assets, it was impossible to trace definitively those he possessed at the time the bankruptcy petition was filed or the manner in which they were acquired. Under this doctrine, Judge Koger found the assets in question to be property of the bankruptcy estate and ordered they be turned over to the trustee.
 

 In the present criminal prosecution, Robbins filed a motion in limine asking the court to exclude judgment and orders of the bankruptcy court and the affirming opinions of the district court and this court. The court ruled that the 1986 order would be admissible on the issue of notice but the findings of fact of the bankruptcy judge would be inadmissible. However, during the criminal prosecution, Judge Koger was permitted to testify that he found the ranch and stock were assets of the bankruptcy estate under the confusion of assets doctrine.
 

 Robbins contends Judge Roger’s testimony cannot supply the evidence to sustain his conviction of transferring or concealing property from the bankruptcy estate for two reasons. First, whether the assets in question belong to the bankruptcy estate is a question of fact for the jury to decide, not Judge Koger. Second, because of the differences in civil and criminal burdens of proof, a bankruptcy court’s finding that certain assets are part of a bankruptcy estate is not controlling in a criminal ease and is inadmissible to prove the same.
 

 The Government argues (1) that Judge Roger’s, opinion was not binding on the jury and it was so instructed, (2) that after the bankruptcy court issued the preliminary injunction on September 10,1986, Robbins was on notice the court had tentatively concluded the ranch and stock were assets of the bank
 
 *393
 
 ruptcy estate, and (3) that Robbins’ flagrant violations of the bankruptcy court’s order by transferring and concealing property that Judge Roger had tentatively found to be part of the bankruptcy estate is sufficient to sustain the conviction.
 

 The Government’s argument is factually incorrect. While it is true that Judge Roger’s September 10, 1986 order enjoined Robbins from “conveying, transferring, assigning or encumbering the property described in Exhibit A,” and Exhibit A listed the ranch and stock, no specific findings identifying these assets as property of the bankruptcy estate were made. In fact, the bankruptcy court did not find these assets part of the bankruptcy estate until 1988.
 
 See Evans v. Robbins (In re Robbins),
 
 83 B.R. 688 (Bankr.W.D.Mo.1988).
 

 The bankruptcy estate includes property interests of the debtor at the commencement of the case. 11 U.S.C. § 541(a)(1). Proceeds of property of the estate are also included in the bankruptcy estate. 11 U.S.C. § 541(a)(6). Accordingly, to find Robbins guilty of transferring or concealing assets of the bankruptcy estate, one of the elements the Government had to prove beyond a reasonable doubt was that the assets in question were Robbins’ prepetition assets or they were acquired by Robbins with prepetition assets or proceeds therefrom.
 
 United States v. Grant,
 
 971 F.2d 799, 802 (1st Cir.1992). Here, because each count of bankruptcy fraud involved after acquired assets, the Government had to prove they were acquired with prepetition assets or proceeds from pre-petition property.
 

 The evidence offered by the Government to prove the after acquired assets were acquired with prepetition property was Judge Roger’s testimony. Judge Roger testified that when he entered the preliminary injunction on September 10, 1986, in his opinion, the assets were property of the bankruptcy estate. Judge Roger testified he reached this conclusion even though no evidentiary hearing was conducted at that time to establish whether the assets had been acquired with prepetition property. Judge Roger explained the doctrine of confusion of assets to the jury and testified he had applied this doctrine in the adversary bankruptcy proceeding to reach the conclusion the assets in question were property of the bankruptcy estate. The bankruptcy trustee also explained the doctrine and reiterated Judge Roger’s findings. During the Government’s closing argument, the jury was twice reminded that the bankruptcy judge determined these assets were property of the bankruptcy estate. The jury was then instructed the bankruptcy estate may include “property determined to be a part of the bankruptcy estate under the doctrine of confusion of assets.” No limiting instruction was given informing the jury that the bankruptcy judge’s findings were admissible only on the issue of notice.
 

 We conclude the bankruptcy judge, not the jury, made the determination that these after acquired assets were property of the bankruptcy estate. No evidence of the acquisition of the Finley River Ranch or the Victor Federal stock was offered. The Government relied on the testimony of Judge Roger. Given Judge Roger’s opinion evidence, coupled with the jury instruction defining the bankruptcy estate, the jury did not have to find that Robbins, in fact, owned the assets when the bankruptcy petition was filed or acquired them with prepetition property. The jury was only required to find the assets were part of the bankruptcy estate because Judge Roger had made that determination under the confusion of assets doctrine.
 

 We hold when the doctrine of confusion of assets is relied upon in the underlying adversary bankruptcy proceeding to prove the property in issue is part of the bankruptcy estate, the doctrine is not admissible in a subsequent criminal prosecution to prove the same. We reach this holding for several reasons. First, the quantum of proof necessary to sustain the bankruptcy court’s finding is less than that required for a criminal conviction.
 
 See Evans,
 
 897 F.2d at 968 (“trustee must demonstrate by clear and convincing evidence that the assets in question are part of the bankrupt’s estate” in a turnover proceeding). Second, because of the different degrees of proof in civil and criminal cases, “findings of the bankruptcy court that the assets were part of bankruptcy es
 
 *394
 
 tate are [not] controlling in the criminal case.”
 
 United States v. Beery,
 
 678 F.2d 856, 868 n. 10 (10th Cir.1982),
 
 appeal after remand,
 
 752 F.2d 499 (10th Cir.),
 
 cert. denied,
 
 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985). Finally, under the confusion of assets doctrine, the burden of proof is at all times on the trustee; however, once a
 
 prima facie
 
 case is established, the burden of going forward is on the bankrupt to desegregate the assets.
 
 Evans,
 
 897 F.2d at 968-69. If the bankrupt fails to refute the evidence, the confused assets become assets of the bankruptcy estate. This is a far cry from requiring the Government to prove beyond a reasonable doubt in a criminal prosecution that the postpetition property was acquired with prepetition assets or proceeds therefrom.
 

 Judge Roger’s opinion, based on the doctrine of confusion of assets in an adversary bankruptcy proceeding, is insufficient evidence to support a finding by the jury that beyond a reasonable doubt, these postpetition assets were property of the bankruptcy estate.
 

 Robbins’ flagrant violations of the bankruptcy court’s order could subject him to criminal contempt sanctions but they are not sufficient to support convictions on charges of concealing bankruptcy estate property. We reverse the convictions for transferring and concealing property of the bankruptcy estate.
 

 B.
 
 Making a False Oath
 

 Robbins next contends there is insufficient evidence to sustain the conviction for making a false oath. On October 27, 1987, Mr. Placzek, counsel for the bankruptcy trustee, deposed Robbins in connection with the adversary proceedings. The following exchange occurred:
 

 Q. [Placzek] Sir, what is 11th and Meridian? Is that a financial institution?
 

 A. [Robbins] No, Huh-uh.
 

 Q. What is it?
 

 A. That was a little corporation that was formed to buy a motel at 11th and— excuse me, I got to back up. Did you say 11th and Meridian?
 

 Q. Yes.
 

 A. I do not know what that 11th and Meridian is. There is a company called 11th and MacArthur.
 

 Q. Okay. And that is a corporation that was formed when?
 

 A. Oh, last couple of years.
 

 Q. Who were the principals of that corporation?
 

 A. I think me and the principals, one of the principals now — well, not now, but it was myself, I guess.
 

 Q. Anyone else?
 

 A. Oh, there was some other people in it for a little bit, but they are gone.
 

 Q. Is the corporation still in existence?
 

 A. Yes, sir. Didn’t buy the property it was going to buy.
 

 Q. Does it have any assets?
 

 A. No.
 

 Q. Did it have any assets at any time?
 

 A. No, sir, not that I remember.
 

 No corporation known as 11th and MacArthur was incorporated in the State of Oklahoma. However, a corporation known as MacArthur and 11th Properties, Inc. was incorporated and Robbins was the president. MacArthur and 11th Properties, Inc. was the payee of a promissory note. By an agreement dated September 23,1987, the corporation transferred its rights in the note in exchange for real estate and an alfalfa cubing facility. MacArthur and 11th Properties, Inc. did have assets.
 

 Robbins contends the government failed to prove that the oath given by him was, in fact, false. Placzek asked him about “11th and MacArthur,” not “MacArthur and 11th Prop-ertiés, Inc.,” and there was no evidence that 11th and MacArthur had any assets or that the corporation existed. Robbins asserts the false oath statute may not be “invoked simply because a wily witness succeeds in derailing the questioner — so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object” of his inquiry.
 
 Bronston v. United States,
 
 409 U.S. 352, 360, 93 S.Ct. 595, 601, 34 L.Ed.2d 568 (1973).
 

 Bronston
 
 involved an unresponsive answer that implied a “no” answer to the question
 
 *395
 
 asked. The Government based its perjury charge on that implication. In addition to the above quote, the Supreme Court said “that any special problems arising from the literally true but unresponsive answer are to be remedied through the ‘questioner’s acuity’ and not by a federal perjury prosecution.”
 
 Id.
 
 at 362, 93 S.Ct. at 602. The Supreme Court pointed out:
 

 [w]hether an answer is true must be determined with reference to the question it purports to answer, not in isolation. An unresponsive answer is unique in this respect because its unresponsiveness by definition prevents its truthfulness from being tested in the context of the question— unless there is to be speculation as to what the unresponsive answer “implies.”
 

 Id.
 
 at 356 n. 3, 93 S.Ct. at 598 n. 3.
 

 Here, no unresponsive answers which could mislead the questioner are involved so we are not faced with this unique problem. Robbins testified a corporation named 11th and MaeArthur was formed during the preceding two years and he was the only remaining principal. The questioner accepted this testimony and asked if “11th and MaeAr-thur” had, or if the corporation ever had, any assets. Robbins’ “no” answers to these questions are the basis for this perjury charge. The answers to this line of questioning are not unresponsive. They contain “nothing to alert the questioner that he may be sidetracked.”
 
 Id.
 
 at 355 n. 3, 93 S.Ct. at 598 n. 3.
 

 Even if Robbins’ answers “were not guileless but were shrewdly calculated to evade,”
 
 id.
 
 at 362, 93 S.Ct. at 602, he is not entitled to the protection of
 
 Bronston
 
 because his answers were not “literally true.” They were false. Robbins cannot escape a false oath charge by misleading the questioner with false testimony and then supply literally true answers to a questions based on his false testimony.
 

 Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of declarant’s answer is for the jury.
 
 United States v. Wolfson,
 
 437 F.2d 862, 878 (2d Cir.1970). Robbins argued to the jury that he did not testify falsely because the questioner asked about 11th and MaeArthur, not MaeArthur and 11th Properties, Inc. The jury did not accept that argument.
 

 The literally true answers to the questions that are the basis of the false oath charge must be considered in the context in which they were given.
 
 See Bronston,
 
 409 U.S. at 355, 93 S.Ct. at 598. Robbins’ answers cannot be considered in isolation.
 
 See id.
 
 at 356 n. 3, 93 S.Ct. at 598 n. 3. On this record, the jury could find beyond a reasonable doubt that (1) Robbins was not misled by the question, he knew the question referred to MaeArthur and 11th -Properties, Inc., he deliberately misstated the true, corporate name, and he intended to deceive the questioner by his previous false testimony and literally true answers, or (2) Robbins made an inadvertent mistake in stating the corporate name, yet he knew the questions were referring to MaeArthur and 11th Properties, Inc.,
 
 [2]
 
 the corporation he had organized during the preceding two years. We find sufficient evidence to sustain the guilty jury verdict for making a false oath and affirm the conviction.
 

 III.
 
 Conclusion
 

 We reverse the convictions on the four counts of concealing property of the bankruptcy estate and affirm the conviction for making a false oath.
 

 [1]
 

 . The Honorable Frank W. Koger, United States Chief Bankruptcy Judge for the Western District of Missouri.
 

 [2]
 

 . The likelihood that Robbins inadvertently made a mistake in naming one of his many enterprises is supported by the court’s instructions which referred to "MaeArthur and 11th" rather than "11th and MaeArthur” and no objections were made to inform the court of this discrepancy.