**In re EXPRESS AMERICA, INC., Debtor.**

**EXPRESS AMERICA, INC., Plaintiff,**

**v.**

**Wendy SIVLEY, t/a Alabama Cartage Company, Defendant.**

**Bankruptcy No. 90–2110–BM.**
**Adv. No. 90–0533–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

July 29, 1991.

---

Roger S. Cunningham, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for plaintiff.

W. David Slomski, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Express America, Inc. (hereinafter "debtor") has brought a turnover action pursuant to 11 U.S.C. § 542 against Wendy Sivley, trading as Alabama Cartage Company (hereinafter "defendant").

Debtor alleges that defendant has failed to pay $228,034.43 that is owed by defendant under a carrier-agent agreement whereby defendant performed as debtor's freight agent. Defendant does not deny that money is owed to debtor. Rather, defendant disputes the amount that allegedly is owed and maintains that it is considerably less than $228,034.43.[1]

Judgment will be entered in favor of debtor and against defendant in the amount of $228,034.43 in accordance with the analysis set forth below.

## I

## FACTS

Debtor is a motor carrier engaged in interstate shipment of freight. Defendant is a commissioned sales agent who solicits and transports freight pursuant to the authority of interstate motor carriers. Debtor and defendant entered into a carrier-agent agreement in April of 1988 whereby defendant had its own drivers or independent haulers transport freight for United States Steel (hereinafter "USS") under licenses and insurance provided by debtor.

Defendant was required to submit certain documents to debtor in order to receive its commission. Once a shipment had been delivered and defendant had submitted the required documents, debtor would advance eighty-five percent (85%) of the invoice amount for that shipment for payment of the driver and for defendant's commission. Debtor would then bill defendant for the full amount of the invoice. Once defendant had been paid by USS, defendant would pay debtor the full invoice amount.

Problems eventually arose concerning the payments debtor was to receive from defendant. As a consequence, the procedures for billing and payment were changed in August of 1989. Debtor was substituted for defendant as the carrier of record for USS. In addition, debtor (instead of defendant) billed USS and USS made payment directly to debtor instead of to defendant. Defendant's role as intermediary in this regard was eliminated. It neither received payment from USS nor made payment to debtor for specific shipments once it received payment from USS.

The problems between debtor and defendant continued after August of 1989. Debtor claimed that it had not received payment from defendant for certain shipments to USS. They met several times between December of 1989 and March of 1990 but were unable to resolve their differences. The relationship between debtor and defendant was terminated in April of 1990.

Defendant also had relationships with other interstate motor carriers similar to the relationship it had with debtor.

---

1. Debtor initially sought to recover $241,102.00. At trial, however, debtor conceded that it could not substantiate $13,067.57 of its claim and accordingly reduced the amount it seeks to $228,034.43.

On July 13, 1990, defendant filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

## II

## ANALYSIS

This adversary has been brought under 11 U.S.C. § 542(a), which provides in pertinent part that:

> ... [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

This provision requires anyone holding property of the estate as of the commencement of the bankruptcy case to deliver it to the trustee (or debtor-in-possession). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977); *also* S.Rep. No. 989, 95th Cong., 2d Sess. 84 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

The following must be established in order for debtor to prevail in this turnover action:

(1) that the property which the trustee seeks to recover is property of the estate; and

(2) that the trustee is entitled under section 363 of the Bankruptcy Code to use, sell, or lease the property.

*In re Weiss–Wolf, Inc.*, 60 B.R. 969, 975 (Bankr.S.D.N.Y.1986).

> The burden of proof in a turnover action: ... is at all times on ... the trustee; he must at least establish a *prima facie* case. After that, the burden of explaining or going forward shifts to the other party, but the ultimate burden or risk of persuasion is upon the trustee.

*Gorenz v. Illinois Dept. of Agriculture*, 653 F.2d 1179, 1184 (7th Cir.1981); *Maggio v. Zeitz*, 333 U.S. 56, 63–64, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948).

■ As part of its *prima facie* case, debtor must show, by clear and convincing evidence, that the property at issue is part of the bankruptcy estate. *Evans v. Robbins*, 897 F.2d 966, 969 (8th Cir.1990) (*citing Maggio*, 333 U.S. at 64, 68 S.Ct. at 405). The burden of producing evidence sufficient to create a more than merely colorable question of fact concerning ownership shifts to the party from whom debtor seeks to recover only after debtor has made out a *prima facie* case. *Gorenz*, 653 F.2d at 1185.

■ Debtor has established, by clear and convincing evidence, a *prima facie* case, that the sum of $228,034.43 which it seeks to recover from defendant is owed to it by defendant and therefore is property of the bankruptcy estate. Specifically, debtor has made a showing that defendant has failed to pay debtor $228,034.43 for several hundred shipments on behalf of USS. The evidence consists of an "accounts aging analysis" compiled from records kept in the ordinary course of debtor's business and of testimony by debtor's President that defendant did not pay debtor.

Defendant does not deny that it owes money to debtor under the terms of the carrier-agent agreement. Instead, defendant has presented evidence which is intended to show that the amount owed to debtor must be reduced for the following reasons:

(1) defendant claims that it paid $41,687.20 to USS for cargo damage for which debtor ultimately was liable under the carrier-agent agreement;

(2) defendant claims that debtor accepted an assignment of accounts receivable totaling $55,480.30 which were owed to defendant by third parties; and

(3) defendant claims that the total amount paid to debtor by defendant exceeds by approximately $105,000.00 the total amount which debtor's own records indicate it was paid by defendant.

These contentions will be addressed *ad seriatim.*

*A.) Cargo Damage*

■ Defendant claims that it paid a total of $41,687.20 to USS for damage to cargo

shipped under the carrier-agent agreement with debtor.

On December 21, 1988, USS filed a claim with defendant in the amount of $5,663.97 for damage sustained on November 21, 1988 when two steel coils fell off the flatbed truck hauling them. Defendant issued a check to USS in the amount of $5,663.37 on April 18, 1989.

On January 17, 1989, USS filed a claim with defendant in the amount of $8,324.26 for damage sustained on December 12, 1988 when two steel coils fell off the flatbed truck hauling them. Defendant issued a check to USS in the amount of $8,324.26 on April 18, 1989.

On January 17, 1989, USS filed a claim with defendant in the amount of $5,102.05 for damage sustained on October 30, 1988 when two steel coils fell off the flatbed truck hauling them. Defendant issued a check to USS in the amount of $5,102.05 on May 24, 1989.

On February 6, 1989, USS filed a claim with defendant in the amount of $14,477.53 for damage to three steel coils on January 10, 1989 when the truck hauling them. collided with a train. Defendant issued a check to USS in the amount of $14,477.53 on August 28, 1989.

Finally, on March 6, 1989, USS filed a claim with defendant in the amount of $8,119.39 for damage to two steel coils when the flatbed truck hauling them collapsed on February 7, 1989. Defendant paid the full amount of the claim in September and October of 1989.

According to defendant, debtor's insurer denied claims submitted by defendant because the documentation submitted failed to identify debtor as the carrier of record. The bills of lading all stated that defendant, not debtor, was the carrier of record.

Defendant has failed to make a showing that the payments it made to USS were for damage to cargo shipped under the carrier-agent agreement with debtor. As has been indicated, at that time defendant acted as agent for other motor carriers under arrangements similar to the one it had with debtor. There is nothing in the documents submitted by defendant at trial to indicate that *debtor* was the motor carrier under whose license and insurance the damaged cargo had been transported.

Furthermore, defendant admitted that it had no records showing that it had submitted a claim to debtor's insurer. When asked to identify debtor's insurer, defendant was unable to do so. Finally, defendant offered no explanation as to why it did not resubmit the claims to debtor's insurer clarifying the point that the damaged cargo had been shipped pursuant to the carrier-agent agreement with debtor.

The averments set forth by defendant in this defense lack credibility. Therefore, we find defendant has failed to meet her burden of showing that the damage claims paid to USS related to shipments governed by the carrier-agent agreement.

Accordingly, the $41,687.20 which debtor paid to USS for cargo damage may not be deducted from the balance due debtor.

## B.) Assignment of Accounts Receivable

█ Defendant claims that it assigned to debtor accounts receivable totaling $55,-480.30 which were owed to defendant by third parties. According to defendant, the debt owed to debtor should be reduced accordingly.

The evidence presented overwhelmingly demonstrates that debtor did *not* accept an assignment of defendant's accounts receivable in partial satisfaction of the debt owed by defendant to debtor.

According to defendant, Mr. John Davis accepted the assignment on behalf of debtor in attempting to resolve the dispute concerning past-due payments from defendant. Mr. Davis was merely a sales representative for debtor and lacked authority to bind debtor in this regard. Moreover, debtor's President testified that debtor would not have accepted such an assignment, had one ever been proposed, because approximately fifty percent (50%) of those receivables were more than twelve months past-due and in all likelihood were not collectible. Debtor, instead of accepting an assignment of those accounts receivable, did agree to

attempt to collect those accounts on behalf of defendant and to apply them as defendant directed. As far as can be ascertained, however, debtor was unable to collect on any of them. Therefore, defendant's argument that the debt should be reduced by this amount is without merit.

*C.) Unapplied Credits*

 Defendant claims that the total amount paid by defendant to debtor exceeds the total amount which debtor's own records indicate it was paid by defendant by approximately $105,000.00.

On February 14, 1990, defendant asked debtor to provide it with a list of payments received from defendant.

On February 22, 1990, debtor sent defendant a list indicating that a total of $251,553.87 in checks had been received from defendant between December 6, 1988 and September 28, 1989.

Defendant produced at trial canceled checks totaling $357,021.52 made payable to debtor. According to defendant, debtor failed to credit the full amount of these payments to defendant's account.

Defendant's contention that she received credit only in the amount of $251,553.87 is incorrect. The list of payments provided by debtor was not comprehensive due to the functioning of debtor's computer program which handled debtor's accounts. Once all invoices pertaining to a particular "load number" had been paid, the data was purged from the relevant computer file and was stored in an "historical" file. The list provided to defendant by debtor did not include data from the historical file. Review of the data contained in the historical file indicates defendant received credit for the full amount of each of the canceled checks made payable to and received by debtor. Therefore, debtor's records indicate defendant was credited for all payments which debtor received and the amount owed by defendant may not be reduced under this theory.

Defendant has also attempted by other means to show that the amount owed to debtor is less than $238,034.43. The court has reviewed the evidence pertaining to these matters and finds that it does not tend to show that the debt owed should be reduced.

An appropriate Order shall be entered.

### ORDER OF COURT

AND NOW at Pittsburgh in said district this 29th day of July, 1991, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered in favor of plaintiff Express America, Inc. and against defendant Wendy Sivley, trading as Alabama Cartage Company, in the amount of $228,034.43.