### In re BLINDER, ROBINSON & CO., INC., Debtors.

### Glen E. KELLER, Jr., Trustee for the Estate of Blinder, Robinson & Co., Inc., Plaintiff/Appellee,

### v.

### Meyer BLINDER, et al., Defendants/Appellants.

Civ. A. No. 90–K–1904.
Bankruptcy No. 90 B 12654 SBB.
Adv. No. 90 1381 CEM.

United States District Court,
D. Colorado.

May 1, 1992.

William A. Bianco, Davis, Graham & Stubbs, Denver, Colo., for plaintiff-appellee.

Ronald G. Rossi, and Paul T. Maricle, Rossi & Judd, Denver, Colo., for Blinders.

James T. Ayers, Denver, Colo., for Intercontinental.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Meyer Blinder, Lillian Blinder, American Rare Coin Exchange, Ltd., Intercontinental

Enterprises, Inc. and Redmey Management Company (collectively, the Appellants) appeal the bankruptcy court's October 12, 1990 judgment ordering them to turn over property, including legal files, to Glen E. Keller, Jr., Trustee of Blinder, Robinson & Co., Inc.'s estate (Trustee). They argue that the court's order was in error because (1) certain files were not property of the estate, (2) turnover of files relating to Meyer Blinder violated his Fifth Amendment right against compelled self-incrimination, and (3) the bankruptcy court should have conditioned its order on the Trustee's agreement to adhere to any joint defense privilege. I affirm.

## I. *Facts.*

On October 2, 1990, the Trustee filed a complaint against the Appellants for turnover of property of the estate and for injunctive relief. The Trustee alleged that the Appellants had in their custody and control property of the estate that must be delivered to the Trustee under 11 U.S.C. § 542(a). On October 10, 1990, the bankruptcy court held a hearing on the complaint.

The proceedings focused on certain legal files held by the former legal staff of Blinder, Robinson who were employed by Intercontinental Enterprises, Inc. after Blinder, Robinson was placed into liquidation under the Securities Investor Protection Act. The Appellants argued that these files fell into three categories. The first were files relating to actions in which Blinder, Robinson was the sole defendant. The Appellants did not object to the turnover of these documents. The second were files involving some joint interest between Blinder, Robinson and another party, such as an agreement by Blinder, Robinson to indemnify that party or the availability of a common defense. The Appellants offered to turn these documents over to the Trustee subject to his guarantee that he would not waive any joint privilege. The third were files involving only third parties. The Appellants refused to turn over these documents, citing the attorney-client privilege.

At the conclusion of the hearing, the bankruptcy court granted the relief requested in the Trustee's complaint. In its October 12 order, the court adopted the classification offered by the Appellants, but held that documents in all three categories were property of the estate which must be turned over to the Trustee under § 542(a). As to the third category, however, the court granted the Appellants' motion for stay pending appeal, subject to the condition that they provide the Trustee with a list "identifying the files for which they are asserting any privilege by number, name and *general* contents," setting forth "the privilege they assert and the basis on which they assert the privilege may be impaired by delivery of that file to the Trustee." (R.Vol. I, Doc. 8 at 1.) The court further ordered the Appellants to provide a list of the third parties, their counsel and the addresses for both. (*Id.*) On October 19, 1990, the Appellants filed their notice of appeal.

## II. *Merits.*

### A. *Status of Legal Files Involving Third Parties Only.*

The Appellants' first argument is that the third category of documents, legal files involving third parties only and not Blinder, Robinson, are not property of the estate or otherwise subject to turnover. Section 542 of the Bankruptcy Code sets forth a two-part scheme for turnover of property of the estate or other information related to the debtor's property or financial affairs. Under section 542(a), an entity

> in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). Thus, "[s]ubsection (a) of this section requires anyone holding property of the estate on the date of the filing of the petition, or property that the trustee may use, sell or lease under section 363, to deliver it to the trustee." *Id.* advisory committee note.

In contrast, subsection (e) of § 542 is directed to persons holding recorded information that is not property of the estate but is otherwise relevant to the debtor's property or financial affairs. It provides:

Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

*Id.* § 542(e). This subsection "was intended to prevent attorneys, accountants, and others similarly protected by state law, from asserting a lien on the debtor's property to obtain repayment of their fees 'in full ahead of other creditors.'" 4 *Collier on Bankruptcy* ¶ 542.06 at 542–27 (L. King 15th ed. 1992) (citing legislative history). Thus, under this statutory framework, "[d]ocuments or books belonging to the debtor and of value or benefit to the estate must be turned over as property of the estate under section 542(a). If the documents or books are not property of the estate, [subsection (e)] applies to require disclosure of the information in such books or records." *Id.* at 542–24.

To prevail on this argument, the Appellants must show that the bankruptcy court clearly erred in finding that Blinder, Robinson's legal files concerning cases in which Blinder, Robinson was not a defendant were property of the estate under § 542(a). They have failed to make this showing.

Here, the undisputed evidence indicates that all of the legal files sought by the Trustee were created and maintained by Blinder, Robinson's former in-house counsel or their support staff. The Trustee testified at trial that he determined that all of the files and records were compiled by Blinder, Robinson's former legal personnel, they were located in space leased and on materials provided by Blinder, Robinson, and the legal staff were all paid by Blinder, Robinson. (*See* R.Vol. I, Tr. at 16, 95.) The Appellants did not attempt to establish that any of the files were produced or maintained by an entity other than Blinder, Robinson, though there was evidence that some of information placed in the files were generated by other sources. Furthermore, the Appellants' counsel conceded that the personnel who prepared the files were employees of Blinder, Robinson at the time, though they later became employed by Intercontinental Enterprises, Inc. (*See id.* at 110.)

Under § 541 of the Code, "property of the estate" is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). In an action to compel turnover of property of the estate under § 542(a), the trustee has the initial burden of proving by clear and convincing evidence that the property in issue is property of the estate under § 541. *Evans v. Robbins,* 897 F.2d 966, 968 (8th Cir.1990); *Express Am., Inc. v. Sivley (In re Express Am., Inc.),* 130 B.R. 196, 198 (Bankr. W.D.Pa.1991).

The Appellants argue that the relevant factor in determining whether these files are property of the estate is the "client" for whom the Blinder, Robinson attorneys were working at the time. They fail to explain, however, how these attorneys could be working solely for another party without having an impact on Blinder, Robinson itself. The single concrete example cited in the record related to files containing information prepared by an outside law firm for an action in which only Meyer Blinder was a named defendant. When asked by the court why Blinder, Robinson maintained a file on this matter, Appellants' counsel conceded that these materials were retained because Blinder, Robinson had a duty to indemnify Mr. Blinder. (*See* R.Vol. II, Tr. at 112.) In this light, this file is more properly characterized under category two, as involving a case in which there is some kind of joint interest between Blinder, Robinson and the third party.

In sum, the record simply does not support the existence of any category three documents. Yet, assuming they exist, the court was correct in ruling that they were

property of the estate. Whether or not the underlying lawsuit involved Blinder, Robinson or an independent third party is irrelevant. For whatever reason, the legal staff of Blinder, Robinson found it necessary to retain these documents in a file in the corporation's offices. Property of the estate includes books and records produced during a corporation's existence. *See* 11 U.S.C. § 521(4) (requiring the debtor to turn over to the trustee "any recorded information, including books, documents, records, and papers, relating to the property of the estate"). The Trustee is entitled to review these materials to determine whether they impact the administration of the estate.

Accordingly, the bankruptcy court's factual finding that the category three files were property of the estate was not clearly erroneous, and the court correctly ordered these files to be turned over to the Trustee under § 542(a). Since turnover was proper under § 542(a), I need not consider whether § 542(e) applies.

### B. *Fifth Amendment Privilege and Right to Effective Counsel.*

█ The Appellants' second argument is that the forced turnover of documents relating to a criminal action against Meyer Blinder violates his Fifth Amendment privilege against compelled self-incrimination and his right to effective assistance of counsel. The Trustee responds that Mr. Blinder's Fifth Amendment rights are not violated because he is not compelled to do anything, and that his right to effective assistance of counsel is not significantly impaired. The Appellants bear the burden of establishing the existence of the privilege. *See Roach v. National Transp. Safety Bd.*, 804 F.2d 1147, 1151 (10th Cir. 1986), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 195 (1988).

█ I agree with the Trustee's position. First, it does not appear that any of the records in question are in Mr. Blinder's or his private counsel's possession. The Fifth Amendment privilege is a personal right and does not extend to documents held by third parties. *See In re Standard Fin.*

*Management Corp.*, 77 B.R. 324, 327 (Bankr.D.Mass.1987).

█ Assuming that Mr. Blinder does hold some of the files, the Fifth Amendment privilege protects only testimonial acts. *See Fisher v. United States*, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976). While in limited circumstances the production of documents or records is, by its very nature, testimonial, *see id.* at 406, 96 S.Ct. at 1578 (noting instance where conceding the existence or possession of document could establish liability), Mr. Blinder has not demonstrated how the production of documents in this case is communicative or testimonial in any way. The existence of these files is not incriminating of itself. *See United States v. Doe*, 465 U.S. 605, 610–11, 104 S.Ct. 1237, 1240–41, 79 L.Ed.2d 552 (1984) (contents of documents and records not privileged under Fifth Amendment); *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973) ("Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him"). *Compare Baltimore City Dept. of Social Servs. v. Bouknight*, 493 U.S. 549, 561, 110 S.Ct. 900, 908, 107 L.Ed.2d 992 (1990) (complying with government's demand to produce child could be testimony as to defendant's control and possession of child). Therefore, I conclude that the Appellants have failed to demonstrate that the bankruptcy court's order violates Mr. Blinder's Fifth Amendment rights.

█ The Appellants' parallel argument—that production of the files would prevent the effective assistance of counsel—is likewise without merit. The Appellants claim that turnover of the files will chill counsel's defense of Mr. Blinder in the criminal action:

The facts are that a Bankruptcy Trustee is now attempting to obtain possession of a file which concerns the criminal defense of Meyer Blinder in Las Vegas, Nevada. Such intrusion obviously interferes with counsel's effort in representing Mr. Blinder. Should counsel know that his file is going to be reviewed by

complete strangers, he will certainly not record his research impressions and theories. He also would not record anything his client tells him.

(Opening Br. of Appellants at 7–8.) This argument is premised on the effect that turnover will have on counsel's *future* actions. The premise is flawed.

The turnover order is directed to documents that were created and were in Blinder, Robinson's files at the time the SIPA liquidation commenced. Some of those files may contain information relating to the criminal action against Mr. Blinder in Nevada. For the chilling effect described above to take place, the Trustee would have to be entitled to continuing access to the files created by Mr. Blinder's criminal defense counsel, thereby causing Mr. Blinder's criminal defense counsel to limit his written work product. The turnover order, however, does not address anything other than documents in existence at the time the SIPA decree was entered and cannot possibly effect counsel's future actions in representing Mr. Blinder in the criminal action. The bankruptcy court's order was not deficient for failing to address this purported but illusory chilling effect on attorney-client communications.

### C. *Joint Defense Privilege.*

The Appellants' final argument is that the bankruptcy court should not have ordered the turnover of category two documents, involving some joint interest or defense between Blinder, Robinson and a third party, without establishing some guarantee that the Trustee would not divulge confidences running to both parties. In my opinion, this request exceeded the scope of the matters raised by the Trustee's turnover complaint.

The sole issue before the court was whether the legal files were property of the estate subject to turnover under § 542(a). The Appellants' concede that the category two files concerning legal matters in which Blinder, Robinson had a direct interest, even though they may also have involved third parties, were property of the estate. They suggest, however, that when-

ever turnover of these files would implicate the joint defense privilege, the court has an absolute duty to provide for some control over the trustee's divulgence of jointly-held confidences. I can find no support for this proposition.

■■■ The joint defense privilege is self-executing. "An exception to the general rule that disclosure to a third party of privileged information thereby waives the privilege, a joint defense privilege cannot be waived without the consent of all parties who share the privilege." *In re Grand Jury Subpoenas 89–3 & 89–4,* 902 F.2d 244, 248 (4th Cir.1990). Therefore, were the Trustee to waive the privilege with respect to any of the documents provided under the turnover order, that waiver would be ineffective as to any appellant in this case who could establish the existence of a joint defense. *See John Morrell & Co. v. Local Union 304A,* 913 F.2d 544, 555–56 (8th Cir.1990) (documents inadvertently provided to adversary by one party signatory to a joint defense agreement shielded for use against other signatory party by attorney-client privilege), *cert. denied,* —— U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991).

Moreover, the few cases in which the courts have considered whether one party to the privilege may take offensive action against another party to prevent disclosure to an adversary indicate that the court's power is limited in this regard. For example, in *Nestle Foods Corp. v. Aetna Casualty & Sur. Co.,* 129 F.R.D. 483 (D.N.J. 1990), the court denied a protective order to a party who could not establish good cause, despite its allegation that disclosure of certain documents would violate the joint defense privilege. In a footnote, the court noted a trend among counsel to seek protective orders to prevent the disclosure of information subject to the joint defense privilege.

> Since most often the parties will consent to such non-disclosure, the parties seek only the Court's imprimatur to their agreement and do not come forward with any showing of good cause. However, when as here, consent is unavailing, the

movant seems unwilling or unable to make the required showing—appearing to believe that a protective order should be available for the asking. The law is to the contrary. Parties should not assume that the court will accede to a protective order because no substantial harm to the party opposing the application can be shown; the requirements of Rule 26 must be satisfied by the movant in each case.

*Id.* at 485 n. 4; *see also Waller v. Financial Corp. of Am.*, 828 F.2d 579, 584 (9th Cir.1987) (prospect that terms of settlement agreement could result in violation of joint defense privilege insufficient to give party standing to object to agreement).

█ In this case, there is even less of a compelling need for a protective decree. The Trustee, when asked about documents subject to the joint defense privilege, freely agreed to adhere to his responsibilities under this doctrine, including providing the Appellants with notice before surrendering any information. (*See* R.Vol. II, Tr. at 92, 94.) Under these circumstances, the court did not err by failing to include a provision in the turnover order expressly providing for enforcement of the privilege. *See also In re Michigan Boiler & Engineering Co.*, 87 B.R. 465, 471 (Bankr.E.D.Mich.1988) (joint defense privilege not a barrier to trustee's discovery of documents held by debtor's former corporate counsel).

### III. *Conclusion.*

The bankruptcy court's judgment is AFFIRMED. The Appellants have not established that documents created and maintained by Blinder, Robinson's legal staff were not property of the estate, that disclosure of some of these documents violates Mr. Blinders Fifth Amendment privilege or right to effective assistance of counsel, or that there was a concrete prospect that the Trustee would reveal information subject to the joint defense privilege.