**In re Terry J. HIMES and Bernadine Himes, Debtors.**

**Kenneth G.M. MATHER, Plaintiff,**

v.

**TAILORED FABRICS, INC., Defendant.**

Bankruptcy No. 93–71272.
Adv. No. 94–7011.

United States Bankruptcy Court,
E.D. Oklahoma.

March 10, 1995.

As Amended March 17, 1995.

---

**280**

John Menchaca, Tulsa, OK, for plaintiff.

Ron Little, Tulsa, OK, for defendant.

### ORDER

TOM R. CORNISH, Bankruptcy Judge.

On the 23rd day of February, 1995, the above-referenced adversary proceeding came on for trial. Counsel appearing were John Menchaca for the Plaintiff and Ron Little for the Defendant.

After hearing the evidence presented and arguments of counsel, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr. P., in this core proceeding:

### FINDINGS OF FACT

1. The Himes filed their bankruptcy on October 19, 1993. Prior to filing bankruptcy, Bernadine Himes had a business known as T & B Industries in Heavener, Oklahoma. T & B Industries was in the business of manufacturing medical scrubs and selling them to employees in nursing homes in Oklahoma, Arkansas and Texas. T & B began operations in April, 1992. Terry Himes worked at T & B Industries when he was not taking care of his chicken houses. He worked part-time for T & B Industries.

2. Sometime thereafter, the Himes received a phone call from Richard Gelman, President of the Defendant, Tailored Fabrics, in New York. Mr. Gelman had learned that T & B was having financial problems. In June, 1992, Richard Gelman traveled to Heavener to view the Himes' business. Later, Tailored Fabrics began supplying fabric to T & B Industries on an extended net

basis; whereas, T & B had previously been on a COD basis with its suppliers of fabric. Eventually, Mrs. Himes began sending her accounts receivable to Mr. Gelman and he was paying the bills for T & B Industries. Mrs. Himes was not keeping records of her monthly expenses.

3. Mr. Gelman agreed to manufacture uniform shirts for a company called NuStart through T & B Industries in Heavener. Mr. Gelman purchased equipment to be used in making these shirts, without discussing the matter with Mrs. Himes. The equipment was sent to T & B in Heavener. Mrs. Himes did not know, and was not allowed to discuss with anyone from NuStart, the cost of making the uniform shirts. Furthermore, Mrs. Himes testified that she believed Mr. Gelman may have allocated the costs of the uniform shirts to T & B Industries. The Court, therefore, finds that the shirts produced for NuStart were for the benefit of Tailored Fabrics and not T & B Industries.

4. There is conflicting testimony as to the business relationship between Tailored Fabrics and T & B Industries. Mrs. Himes testified that she believed Mr. Gelman was applying the accounts receivable she sent him toward the T & B trade debts. At that time, the Himes were operating as T & B Industries, a sole proprietorship. The parties discussed a joint business venture. Mr. Gelman was to pay off certain creditors of T & B; pay current rent and utilities, payroll, etc. In addition, Mr. Gelman was to provide raw materials for the medical scrubs and raw materials and new machinery for the uniform shirts. The agreement was never reduced to writing. Bernadine Himes testified that there was never an agreement to incorporate T & B Industries.

In July, 1992, Richard and Peggy Gelman, husband and wife, through their New York attorney, caused T & B to be incorporated as T & B Industries, Inc. with the Secretary of State of Oklahoma. Mrs. Himes testified that she knew nothing about an agreement to incorporate T & B Industries and that the first time Mrs. Himes saw the stock certificates and incorporation papers was in December, 1992 or January, 1993. The Himes were presented with a shareholder agreement for their signature; however, the Himes never signed this agreement. The Himes never signed the stock certificates presented to them. Mrs. Himes testified that she remitted $81,718.22 to Mr. Gelman only because she had been threatened with Mr. Gelman's New York City lawyers. Mrs. Himes further testified she didn't trust anyone from New York because of TV shows she had seen and she had always been suspicious of Mr. Gelman. Mr. Gelman's records reflected that Mrs. Himes remitted $70,423.85 in accounts receivable to him during their business relationship.

At some point, Mrs. Himes requested an accounting from Mr. Gelman. Mr. Gelman responded that T & B still owed him $40,000.00. Mrs. Himes responded that she did not believe she owed him that much and that was the first time she knew of this debt. Mrs. Himes testified that Mr. Gelman told her "to send him the f------ money or we [the Himes] would be living in a f------ tent or dead, he didn't care which." Mr. Gelman did not deny making this statement. As one might imagine, this business marriage was rapidly deteriorating toward a divorce.

5. The Trustee filed this adversary proceeding seeking to recover property of the estate pursuant to § 542(a) of the Bankruptcy Code, alleging that Tailored Fabrics charged its own expenses to T & B Industries and therefore, the Trustee should recover the property of the estate. Alternatively, the Trustee seeks to recover preferential transfers to an insider, Tailored Fabrics, pursuant to 11 U.S.C. § 547(b).

## CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(E) and (F).

B. Section 542(a) of the Bankruptcy Code provides as follows:

Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor

may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

C. The burden of proof in a turnover proceeding is at all times on the Trustee. *Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir.1990) (*quoting Gorenz v. Illinois Department of Agriculture*, 653 F.2d 1179, 1184 (7th Cir.1981)). The Trustee must at least establish a prima facie case. *Id.* As a part of that prima facie case, the Trustee must demonstrate by clear and convincing evidence that the assets in question are part of the bankrupt's estate. *Maggio v. Zeitz*, 333 U.S. 56, 63–64, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948); *In re Blinder, Robinson & Co.*, 140 B.R. 790 (D.Colo.1992); *In re Express America*, 130 B.R. 196 (Bankr.W.D.Pa.1991).

D. In the instant case, the Trustee presented evidence of the monies paid to Mr. Gelman. The Trustee presented no evidence of the Himes' expenses. Mrs. Himes testified that she had no records regarding her expenses. She further testified, on cross-examination, that it cost her approximately $5 for each scrub shirt or pant that she made. She also testified that in June, 1992, she was producing approximately 5,000 scrubs. As a result, her expenses for June, 1992 would be approximately $25,000. Mrs. Himes further testified that in September, 1992, the number of scrubs she produced decreased because they were producing the uniform shirts for NuStart.

The Trustee in reconstructing T & B expenses at trial used the average Himes' expenses during 1994 and 1995. This was sometime after the termination of the Gelman relationship. Bernadine Himes testified that her average monthly expenses are now $5,500. This business relationship commenced in April, 1992 and lasted until January, 1993. The Defendant presented evidence that the average monthly expenses of T & B were greater than $5,500 during their relationship. The exhibits presented by the Defendant consisted of duplicate invoices, bills for fabric that could not have been used for medical scrubs and for expenses that this Court could not determine whether they were for T & B or for Tailored Fabrics.

The Trustee has a heavy burden to prove a prima facie case. From all the testimony heard, the Court finds that there is no money, after T & B Industries' expenses were paid, for the estate. The Trustee has not proved, by clear and convincing evidence, that there is any money owed to the bankruptcy estate by Tailored Fabrics. The Court is bound by the evidence presented and not what may amount to speculation or suspicion. The Court finds it questionable that a sophisticated business like Tailored Fabrics would not have a clear set of records on its Heavener, Oklahoma venture. Mr. Gelman testified that he believed Tailored Fabrics lost more than $160,000.00 in this venture.

E. Alternatively, the Trustee attempts to recover payments made to Gelman as an insider pursuant to 11 U.S.C. § 547(b). At the conclusion of the trial, this Court directed Mr. Gelman's corporate counsel at the hearing, Mr. Howard Goldstein, to provide the Court copies of corporate minutes and any tax returns of T & B Industries, Inc. Nothing has been provided to the Court by Mr. Goldstein or Oklahoma counsel, nor has an explanation been given as to why it was not furnished pursuant to this Court's directive. The Court can only assume that this cavalier treatment of the Court's order is indicative of Mr. Goldstein's and/or Mr. Gelman's opinion that this tribunal is some Mickey Mouse or hayseed forum in rural eastern Oklahoma far from the financial centers of New York City. The Court might also assume that the failure to provide this financial and corporate information demonstrates that there is something to hide from this trier of fact.

Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

   \*      \*      \*      \*      \*      \*

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and ...

"Insider" includes the following:

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control;

11· U.S.C. § 101(31).

In the instant case, Richard Gelman was not a relative of the Debtors. The Debtors are not general partners in a partnership nor is Tailored Fabrics a general partner of the Debtors. Although there is conflicting testimony regarding the business relationship between the Debtors and Tailored Fabrics, the Debtors never executed any stock certificates nor did Mrs. Himes file any business tax returns. A Franchise Tax Return exists, but it was signed by Peggy Gelman on behalf of T & B Industries, Inc. Mrs. Himes testified that she did not know that T & B Industries had been incorporated nor did she know she was an officer. Mrs. Himes believed that she was making payments on an account for T & B Industries, a sole proprietorship.

Some cases have construed an "insider" broadly and have applied the term flexibly to include those parties who have a close relationship with the debtor. *See, In re Orsa Assoc.,* 99 B.R. 609 (Bankr.E.D.Pa.1989); *In re Babcock Dairy Co. of Ohio, Inc.,* 70 B.R. 657 (Bankr.N.D.Ohio 1986). It appears to this Court that the Himes had the ability to end this "relationship" at any time and thus, Mr. Gelman did not have such a close relationship as to be considered an "insider." The Himes terminated this relationship in January, 1993 by chaining the door to the plant in order to keep Mr. Gelman from entering the premises. This certainly demonstrates an unusual method, outside the judicial process, to terminate a soured business relationship. This Court therefore finds that Tailored Fabrics was not an insider.

IT IS THEREFORE ORDERED that Judgment be entered for the Defendant.