**In the Matter of: RIMSAT, LTD., Debtor.**

**Paul E. UNDERWOOD, Trustee,
Plaintiff–Appellee,**

**v.**

**Carl B. HILLIARD, Jr., Defendant–
Appellant.**

**Nos. 95–3916, 96–1212 and 96–1505.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 3, 1996.

Decided Oct. 17, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 21, 1996.

958

Mark A. Warsco (argued), James T. Young, Warsco, Brogan & Strunk, Fort Wayne, IN, for Paul E. Underwood.

Alexander L. Edgar, United State Department of Justice, Ellen Triebold, Office of the United States Trustee, South Bend, IN, for Trustee.

Robert M. Beckman (argued), Bode & Beckman, David M. Kirstein, Beckman & Kirstein, Washington, DC, Jack E. Roebel, Roebel & Associates, Fort Wayne, IN, for Carl B. Hilliard, Jr., in No. 96-1505.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

Paul Underwood, trustee in bankruptcy of Rimsat, Ltd., brought an adversary proceeding in bankruptcy against Carl Hilliard, who appeals from three orders entered in that proceeding. Rimsat had been formed in 1992 to provide satellite communications (using Russian equipment) to Tonga and other islands in the South Pacific. Most of its investors are Malaysian. It was incorporated in the Federation of St. Christopher and Nevis (also known as the Federation of Saint Kitts and Nevis), a Caribbean nation that belongs to the British Commonwealth. (Horatio Nelson, later Admiral Lord Nelson, was married in Nevis.) Its principal place of business is in Fort Wayne, Indiana. Most of its financial assets are there, but its nonfinancial assets, principally leaseholds in satellites, have no terrestrial site.

Rimsat quickly became troubled; and Hilliard, a director and shareholder, began squabbling with the managing director over control of the corporation. In December 1994 Hilliard obtained from the High Court of Nevis an injunction against Rimsat's declaring bankruptcy or continuing to prosecute a suit that it had brought against Hilliard in the United States, and against the managing director's usurping the powers of the board of directors. On January 20, 1995, Hilliard obtained a further order from that court appointing him receiver with full powers to manage Rimsat. Two weeks later,

Robert M. Beckman (argued), Bode & Beckman, Washington, DC, Jack E. Roebel, Roebel & Associates, Fort Wayne, IN, for Carl B. Hilliard, Jr. in Nos. 95-3916, 96-1212.

several creditors of Rimsat petitioned the corporation into Chapter 11 in the federal bankruptcy court in Fort Wayne. A trustee in bankruptcy was appointed and we are told that he and Hilliard cooperated in formulating a plan for the reorganization of Rimsat. But later the trustee resigned under pressure from the creditors, and a successor trustee, Underwood, was appointed who instituted the adversary proceeding in which the challenged orders were entered. In June 1995, at the trustee's urging, the bankruptcy court enjoined Hilliard from exercising control over property of Rimsat or otherwise interfering with the bankruptcy proceeding. This injunction (as affirmed by the district court) is the first order that Hilliard challenges. The second is a further injunction, issued several months later, commanding Hilliard to turn over all property of Rimsat in his control to the trustee and to file an accounting of that property with the bankruptcy court. The third is an order that Hilliard pay, as a civil contempt sanction for disobeying the second order, $1,000 a day until he complies with it. We were told at argument that he complied this past June, but he has not yet paid the fine, some $180,-000, which had accrued to that date. Meanwhile the bankruptcy proceeding is continuing, and we are told that one of Rimsat's major creditors has submitted a plan of reorganization that is now under consideration by the bankruptcy court.

The basis of the first two orders that Hilliard challenges is that the Bankruptcy Code vests control over the assets and business of the debtor in the trustee in bankruptcy (if a trustee is appointed), 11 U.S.C. § 323(a), and that as a receiver Hilliard was a custodian of Rimsat's assets, § 101(11)(A), and therefore obligated by section 543(b) of the Bankruptcy Code to deliver any of the debtor's assets that were under his control to the trustee and to file with the bankruptcy court an accounting of those assets. Hilliard objects to these orders on the principal ground that the bankruptcy court should have suspended or dismissed all proceedings before it in deference to his receivership; if that had been done the orders would not have been issued, or if issued before the suspension or dismissal of the bankruptcy

proceeding would have been rescinded. The Bankruptcy Code authorizes, though it does not (as Hilliard seems to believe) command, such dismissal or suspension if "there is pending a foreign proceeding." § 305(a)(2)(A). This is defined as a proceeding "in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." § 101(23). Rimsat's domicile is in Nevis, because a corporation's domicile is the state of incorporation. *Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519, 588, 10 L.Ed. 274 (1839); *Restatement (Third) of the Foreign Relations Law of the United States* § 213 (1987); *1 Collier on Bankruptcy* ¶ 3.02[b][ii] (Lawrence P. King ed., 15th ed. 1996).

When a motion to dismiss the bankruptcy proceeding on the ground that the receivership created by the High Court of Nevis was "for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization" was first made (by an ally of Hilliard's), the bankruptcy judge denied it. His ground was that, so far as he could make out, the receivership was a device by which Hilliard had wrested control of Rimsat away from the corporation's managing director, rather than anything in the nature of an insolvency proceeding. In other words, it was not an equity receivership, the kind of thing to which the definition of "foreign proceeding" that we have quoted points; it was merely an operating receivership. Because it was not an equity receivership, the adversary proceeding did not run afoul of *Barton v. Barbour*, 104 U.S. 126, 128–29, 26 L.Ed. 672 (1881), which held that a suit against an equity receiver could not be maintained without the permission of the court that had appointed him. The purpose of that ruling (we need not decide to what extent it has been supplanted by subsequent bankruptcy statutes) was to prevent creditors from circumventing the receivership proceeding by suing the receiver in a different court. The plaintiff in the

present adversary proceeding is the trustee in bankruptcy, not a creditor seeking to go around the trustee. And the defendant was not at the time of the challenged ruling an equity receiver but merely someone whose actions were making it difficult for the trustee to do his job.

■ Shortly after the denial of the motion to dismiss, Hilliard went back to the High Court of Nevis and obtained an order adding to the receiver's original duties (or perhaps only making explicit, though Hilliard doesn't argue this) the duty of paying, adjusting, and if necessary discharging the debts of Rimsat. Hilliard then renewed the motion in bankruptcy court to dismiss the bankruptcy proceeding, citing the ruling by the Nevis court. Maybe "renewed" is not quite the right word. He urged dismissal in the adversary proceeding brought by the trustee rather than in the underlying bankruptcy proceeding. No matter. You can defend against an adversary proceeding on grounds that, if valid, knock out the whole proceeding and not just the claim against yourself. See, e.g., *In re Cash Currency Exchange, Inc.*, 762 F.2d 542, 544–45 (7th Cir.1985). It is commonplace, in bankruptcy adversary proceedings as in other kinds of case, to make arguments that if accepted have potentially catastrophic implications for litigants in related proceedings. For an example from bankruptcy, see *In re MacFarlane Webster Associates*, 121 B.R. 694 (Bankr.S.D.N.Y.1990).

■ Hilliard's effort to vacate the denial of the motion to dismiss by invoking the "foreign proceeding" provision of the Code must fail for a variety of independent reasons. By going back to the Nevis court for an order enlarging his powers over the assets of the debtor he violated the automatic stay of proceedings relating to the debtor's estate that went into effect when the bankruptcy petition was filed. 11 U.S.C. § 362. Although the primary use of the automatic stay is to prevent the debtor's estate from being picked to pieces by creditors, e.g., *Martin–Trigona v. Champion Federal Savings & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989), the stay is not limited to that use. Its use here is consistent with both the statutory language, see §§ 362(a)(1) and (a)(3),

and the statutory purpose of preventing a " 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' " *In re Holtkamp,* 669 F.2d 505, 508 (7th Cir.1982); see also *In re Falls Bldg., Ltd.,* 94 B.R. 471, 480–81 (Bankr.E.D.Tenn.1988). Unlike a creditor's action, Hilliard's recourse to the Nevis court did not threaten to deplete the estate directly. But it did imperil the orderly administration of the bankruptcy proceeding, and by doing so it posed an indirect threat to the estate. Compare *Rett White Motor Sales Co. v. Wells Fargo Bank,* 99 B.R. 12, 14–15 (N.D.Cal.1989).

■ The fact that the stay affected proceedings in a foreign country would be relevant to a motion to lift the automatic stay (§ 362(d)), had one been made (none was). The movant could argue for relief from the stay on the basis of the doctrine of comity, though the argument, as we shall see, might not succeed. But the mere existence of a foreign proceeding affecting the debtor does not, as Hilliard believes, invalidate the stay by giving it an impermissible extraterritorial reach. Hilliard is a U.S. citizen, incontestably within the jurisdiction of the Congress of the United States, which can by statute (the automatic stay) forbid him to conduct proceedings anywhere in the world that would affect the debtor's property. See *Blackmer v. United States,* 284 U.S. 421, 436, 52 S.Ct. 252, 254, 76 L.Ed. 375 (1932); *Restatement, supra,* § 402(2). There is no authority for allowing the presumption against the extraterritorial application of U.S. statutes (*EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 1230–31, 113 L.Ed.2d 274 (1991)) to defeat application of the automatic stay to a U.S. citizen to prevent his interfering with a U.S. bankruptcy proceeding in which the debtor is a corporation headquartered in the United States. Compare *In re Maxwell Communication Corp.,* 186 B.R. 807, 818–21 (S.D.N.Y.1995), aff'd. on other grounds, 93 F.3d 1036 (2d Cir.1996). The efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the debtor wherever located (see § 541(a)), which in this case required that Hilliard be prevented

from exercising control over the debtor. Cf. *Stegeman v. United States,* 425 F.2d 984, 985–86 (9th Cir.1970) (en banc); *In re Rubin,* 378 F.2d 104, 109 (3d Cir.1967).

 The supplementary ruling of the court in Nevis, rather than showing that a foreign proceeding had been pending when the U.S. bankruptcy proceeding was filed, bespoke an effort to derail the bankruptcy proceeding by a foreign proceeding instituted later, the original foreign proceeding having been one to create an operating receivership outside the scope of section 305(a)(2)(A). Hilliard's request to the Nevis court for a ruling converting the operating receivership to an equity receivership in effect instituted the foreign proceeding to which the statute refers. The statute does not require in so many words that the foreign proceeding have been pending since the outset of the U.S. bankruptcy proceeding. But even more clearly it does not require the bankruptcy court to abstain on the basis of a proceeding instituted after, and in an effort to defeat, the bankruptcy proceeding—strategic conduct that is not to be encouraged.

 The Nevis receivership has also not been shown to be a sufficiently close substitute for the U.S. bankruptcy proceeding to warrant abstention. *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.,* 44 F.3d 187, 193 (3d Cir.1994); *Victrix Steamship Co. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713–14 (2d Cir.1987); *In re Petition of Hourani,* 180 B.R. 58, 64–70 (Bankr. S.D.N.Y.1995); cf. *Canada Southern R.R. v. Gebhard,* 109 U.S. 527, 538–39, 3 S.Ct. 363, 370–71, 27 L.Ed. 1020 (1883). Hilliard has not furnished the bankruptcy court with a detailed description of Nevisian insolvency law and procedures. And since all of Rimsat's assets (save a bank account with only $1,700 in it), creditors, and shareholders are located outside of Nevis, Nevis may be an inconvenient forum—still another reason not to abstain in favor of it.

 Even if, as we do not for a moment believe, the district court erred in refusing to abstain, it is not at all clear that we can do anything about it. Section 305(c) of the Bankruptcy Code makes an order granting or denying abstention under section 305(a) nonreviewable by the court of appeals. See *In re Axona Int'l Credit & Commerce Ltd.,* 924 F.2d 31 (2d Cir.1991). Now it is true that orders that are not immediately appealable because of lack of finality ordinarily can be reviewed in conjunction with a final order entered later. E.g., *Boire v. Greyhound Corp.,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). And sometimes the person against whom the order is directed can precipitate review by disobeying the order and appealing from a resulting judgment for criminal contempt. This is the standard method for obtaining immediate review of a discovery order. *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.,* 32 F.3d 1175, 1177 (7th Cir.1994). But if section 305(c) expresses a congressional policy that orders granting or denying abstention under section 305(a) shall *never* be reviewable by the court of appeals, Hilliard should not be permitted to circumvent it by engaging in contumacious behavior that required the bankruptcy court to issue an injunction, in the hope that by appealing from the injunction he could obtain appellate review of the order refusing to abstain, which underlies the injunction. Cf. *Pacific Live Stock Co. v. Lewis,* 241 U.S. 440, 447, 36 S.Ct. 637, 640–41, 60 L.Ed. 1084 (1916). We need not pursue this interesting question about the scope of section 305(c). The lack of merit to Hilliard's challenge to the refusal to abstain is clear, and the trustee (whose presentation in this court has left something to be desired) has not argued for affirmance (or dismissal of the appeal) on the basis of section 305(c).

 Hilliard makes the further argument against the two injunctions issued by the bankruptcy court that he is immune from that court's jurisdiction by reason of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* He might conceivably be regarded as the "organ" of a foreign state by virtue of having been appointed a receiver of a foreign corporation by a foreign court. Cf. *Taylor v. Sternberg,* 293 U.S. 470, 472, 55 S.Ct. 260, 261, 79 L.Ed. 599 (1935) (describing an equity receiver as "an officer of the court which appoints him"); but cf. *Remington Rand Corp.–Delaware v. Business Sys-*

*tems Inc.,* 830 F.2d 1260, 1265–66 (3d Cir. 1987); *Cromelin v. United States,* 177 F.2d 275, 277 (5th Cir.1949). But he is a citizen of the United States, and is therefore placed outside the protection of the Act by the Act's express terms. 28 U.S.C. § 1603(b)(3).

Another nonstarter is Hilliard's argument that the injunctions are really injunctions against the court of a foreign state—are writs of prohibition, in other words. *Hoover v. Wagner,* 47 F.3d 845, 850–51 (7th Cir.1995). The injunctions do not command the High Court of Nevis to do or not to do anything. But they do interfere with a proceeding before a foreign court, and the doctrine of international comity (the mutual respect of sovereigns) requires the courts of one nation to avoid, where possible, interfering with the courts of another. See *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.,* 10 F.3d 425, 431–33 (7th Cir.1993); *Philips Medical Systems Int'l B.V. v. Bruetman,* 8 F.3d 600, 604–05 (7th Cir.1993); *Laker Airways Ltd. v. Sabena,* 731 F.2d 909, 939–40 (D.C.Cir.1984), and with specific reference to bankruptcy the *Philadelphia Gear, Victrix,* and Maxwell cases cited earlier and 11 U.S.C. §§ 305(a)(2)(B), 304(c)(5).

We need not decide whether the foreign-proceeding provision of the Code that we discussed earlier codifies the doctrine of international comity so far as bankruptcy law is concerned or whether comity remains an independent ground, not bounded by the statute, for abstention in a bankruptcy case. Either way, Hilliard's appeal to comity must fail. Comity is a doctrine of adjustment, not a mandate for inaction. In the case of parallel inconsistent proceedings in domestic and foreign courts, one must yield; there is no presumption that it is the domestic; and the bankruptcy judge did not abuse his discretion in deciding that the receivership proceeding in Nevis should be the one. Cf. *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc., supra,* 10 F.3d at 430–31. Given the location of the debtor's headquarters and financial assets, the uncertainty concerning the exact nature of the Nevis receivership, and the absence of any indication that U.S. bankruptcy law requires a resolution of the disputes among the debtor's shareholders

and creditors that would offend the principles that Nevis would apply, see *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 798–99, 113 S.Ct. 2891, 2910–11, 125 L.Ed.2d 612 (1993), it is evident that the bankruptcy court in Fort Wayne provides a more suitable and convenient forum for the resolution of those disputes than the court in Nevis.

We might have a different view if the filing of the bankruptcy petition had violated that court's injunction against Rimsat's declaring bankruptcy. It did not. The injunction does not purport to enjoin Rimsat's creditors from forcing the corporation into bankruptcy to protect their own interests. They were not even parties to the proceeding in Nevis. While Hilliard darkly hints that the petitioning creditors are mere cat's paws of Rimsat's managing director, his rival, there is no convincing evidence of this. We might also be given pause if the State Department had made representations to us concerning the possible impact of the bankruptcy court's orders on U.S. relations with the Federation of St. Christopher and Nevis. *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc., supra,* 10 F.3d at 431. It has not.

The remaining issue is the propriety of the determination that Hilliard is in contempt of the turnover order. But we must decide first whether we have jurisdiction of the appeal from the order finding him in contempt and levying a sanction. Whether a judgment of civil contempt is appealable at the time entered, rather than later, at the windup of the entire case in the court of first instance, depends on the appealability of the underlying order, the order that the judgment of civil contempt is intended to coerce the contemnor to obey. If it is a nonappealable discovery order, an immediate appeal from a judgment designed merely to enforce that order would circumvent the limits on the appealability of discovery orders and so is not permitted. *Powers v. Chicago Transit Authority,* 846 F.2d 1139, 1141 (7th Cir.1988). All courts to consider the issue have held, nevertheless, that if the underlying order is appealable, a civil contempt judgment designed to enforce it is appealable at the same time. *United States v. Bayshore*

*Associates, Inc.*, 934 F.2d 1391, 1398 (6th Cir.1991); *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1150, 1155 (3d Cir. 1982), and cases cited there; *New York v. Shore Realty Corp.*, 763 F.2d 49, 51–52 (2d Cir.1985); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965–66 (6th Cir.1976); 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3917, pp. 394–96 (1992).

Yet after *Swint v. Chambers County Comm'n*, —— U.S. ——, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), expressed profound skepticism concerning judge-created doctrines of appellate jurisdiction, the doctrine of pendent appellate jurisdiction—though its validity was expressly left open, *id.* at ——, 115 S.Ct. at 1212—hangs by a thread. And the insistence, in the usual formulations of the doctrine, that the order sought to be reviewed as a pendant involve the same facts and issues as the main order, see, e.g., *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1084 (7th Cir.1992); *United States for Use of Valders Stone & Marble, Inc. v. C-Way Construction Co.*, 909 F.2d 259, 262 (7th Cir.1990)—that the two orders be "inextricably intertwined," as judges like to say—would exclude a case such as this; the validity and the scope of the injunction that Hilliard was found to have violated are cleanly separable.

But the special rule for civil contempts can be defended on the following ground, which sets the rule apart from any general doctrine of pendent appellate jurisdiction: If the injunction is invalidated but the judgment of civil contempt for violating it remains undisturbed, the party against whom that judgment was entered will have to file a separate appeal in order to knock out the fine intended to coerce him to obey an injunction that has been determined to be invalid. *Gregory v. Depte*, 896 F.2d 31, 41–42 (3d Cir.1990) (separate opinion). Such a multiplication of appeals does not make sense. It is true that if the validity of the contempt sanction is upheld before the sanction is complied with, a further appeal, concerning for example the date when compliance finally was achieved, is possible. That is to say that two appeals are possible even if we decide the issue of con-

tempt at the same time as the validity of the order that the appellant was held to be in contempt of. However, two appeals are not only possible, they are virtually certain, if we do not decide the issues together but instead decide validity (and find the order invalid) and refuse to disturb the judgment of contempt. And if for this reason Hilliard was entitled to complain on this appeal of both the validity of and his compliance with the injunction, then the fact that we have upheld its validity ought not bar us from considering the issue of compliance—an issue that Hilliard was entitled to ask us to consider. Otherwise our jurisdiction would depend on our view of the merits.

We cannot be certain that the special doctrine is correct. The cases that enunciate and apply it all precede *Swint*. But we are encouraged in our view that it is correct and survives *Swint* by the fact that the Court in *Swint* cited with approval a case that rests on considerations similar to those that animate the special doctrine. See —— U.S. at ——, 115 S.Ct. at 1212, citing *Schlagenhauf v. Holder*, 379 U.S. 104, 110–11, 85 S.Ct. 234, 238–39, 13 L.Ed.2d 152 (1964). The court of appeals in *Schlagenhauf* had been asked in a petition for mandamus to hold that a district court does not have the power to order a physical examination of a defendant (as distinct from a plaintiff) and that in any event good cause had not been shown to examine this defendant as required by Fed.R.Civ.P. 35. The court upheld the power to examine defendants but refused to reach the issue of good cause to examine the particular defendant, on the ground that it was not the kind of issue that is properly resolved in a mandamus proceeding. The Supreme Court held that, even so, the court of appeals should have decided the issue "so as to avoid piecemeal litigation and to settle new and important problems." 379 U.S. at 111, 85 S.Ct. at 239. We don't have "new and important problems" here, but we have an acute danger of piecemeal litigation, and there is a close parallel between determining the validity of an order and whether it is violated, on the one hand, and determining the power to examine and whether the power was properly exercised in the particular case, on the other. Given the approving citation of *Schlagenhauf*

in the *Swint* decision, we conclude that the special doctrine concerning the review of a civil contempt judgment in an appeal challenging the order underlying the judgment remains valid.

■ This brings us to the merits of that judgment. The underlying order directed Hilliard to "deliver to the [trustee in bankruptcy] any property of the debtor, Rimsat, Ltd., held by or transferred to [Hilliard], or the proceeds, product, offspring, rents, or profits of such property, that is in defendant's possession," and to file an accounting of that property, its proceeds, etc. with the court. Hilliard failed to turn over the books of account and other records of Rimsat that he had obtained, and retained, as receiver. He argues that they are not "property" (and certainly not proceeds, product, etc. of property) within the meaning of the injunction.

■ Some records of a corporation might not be the corporation's property in the literal sense of being owned by it. They might be the property of an accountant or lawyer. Daniel R. Cowans, *Bankruptcy Law and Practice* § 10.2, p. 221 (6th ed. 1994). More commonly they will be conceded to be corporate property and will merely be retained by the accountant or lawyer, sometimes in an effort to coerce payment of fees from the corporation. See 11 U.S.C. § 542(e); *In re Beef N' Burgundy, Inc.*, 21 B.R. 69 (Bankr.N.D.Ga.1982). We do not understand Hilliard to be contending that Rimsat's books and records were not owned by Rimsat. The argument, rather, is that they are not the kind of property to which the injunction refers. The bankruptcy judge disagreed, and we defer, within limits not here exceeded, to a judge's interpretation of his own order. *Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 908 (7th Cir. 1995). But it is unclear whether the bankruptcy judge thought that he was interpreting the turnover order or interpreting the turnover statute, on which the order is based and which the order tracks verbatim; and we do not defer to statutory interpretations by trial courts. The inclusion in the order of the patently inapplicable term "offspring" is a tipoff that the language of the order was copied uncritically from section 543(b) of the Bankruptcy Code.

We can find no court of appeals cases dealing with whether the word "property" as used in the statute includes books and records, although we have found two cases from other courts in which books and records were included, though without extended (in one case without any) discussion of the issue. *In re Blinder, Robinson & Co.*, 140 B.R. 790, 794 (D.Colo.1992); *In re Property Management & Investments, Inc.*, 17 B.R. 728, 733 (Bankr.M.D.Fla.1982). A separate section of the Code requires "the *debtor* ... [to] surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate" (emphasis added). § 521(4). But the bankruptcy court could not have based the turnover order on this section, since Hilliard is not the debtor.

It is arguable that the term "property" in section 543(b) is limited to productive assets, the sort of thing that might generate proceeds or profits or other product. Section 521(4) could be cited in support of this argument. But the literal interpretation of section 543(b), which would sweep books and records into the bin labeled "property," is preferable on the ground (which is not negligible) of simplicity. The existence of section 521(4) does not argue strongly against this interpretation. The section is not rendered superfluous by the interpretation; it reaches records that are not the property of the debtor though in his possession.

■ Although comfortable with this interpretation, we are mindful that an injunction must be clear on its face, and not merely as applied, for the violation of it to be sanctionable either civilly or criminally. *Schering Corp. v. Illinois Antibiotics Co.*, supra, 62 F.3d at 906; *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 61 F.3d 94, 98 (1st Cir. 1995). But this injunction is clear enough. Any property of the debtor in Hilliard's possession is any property of the debtor in Hilliard's possession. The books and other corporate records were property of the debtor and were in Hilliard's possession. Q.E.D. And before imposing the fine the bankruptcy judge gave Hilliard an opportunity to turn

over the books and records to the trustee— by ordering him explicitly to "deliver ... to the plaintiff/trustee the documents, books and records required by the court's judgment"—thus dissipating any lack of notice of which Hilliard might complain. *In re Runnells*, 815 F.2d 969 (4th Cir.1987). Hilliard failed to comply. The fine began to accrue ten days after the judge gave him this last chance.

We also find no error in the bankruptcy judge's finding that Hilliard's hastily assembled three-page description of the assets under his control did not comply with the part of the injunction that required him to file an accounting of those assets.

Hilliard's other arguments lack sufficient merit to warrant extending this opinion.

AFFIRMED.